State *v.* Beach.

## STATE *v.* BEACH.

[No. 17,736. Filed February 18, 1897.]

CRIMINAL LAW.—*Indictment.—Failure to Charge a Public Offense.—Practice.*—The question as to whether or not an indictment states facts constituting a public offense should be presented by a motion to quash or a motion in arrest, and not by motion to direct the verdict. *p. 77.*

INDICTMENT.— *Sufficiency Of.— Embezzlement.* — Where the offense charged in the indictment is a statutory one it is not necessary as a general rule, to set out in the indictment the facts constituting the crime, but it is sufficient to charge the offense in the language of the statute, or in terms substantially equivalent thereto. *pp. 77, 78.*

EMBEZZLEMENT.—*Evidence. —Power of Legislature to Prescribe Rules of Evidence.—Statute Construed.*—Section 2031, Burns' R. S. 1894, which provides that the failure, suspension, or involuntary liquidation of a banker within thirty days after receiving a deposit shall be *prima facie* evidence of intent to defraud on the part of such banker is not unconstitutional as depriving accused of the presumption of innocence. *pp. 78–84.*

EVIDENCE.—*Power of Legislature to Prescribe Rules Of.—Statutory Construction.*—Where the legislature, in prescribing the rules of evidence leaves the party a fair opportunity to establish his case or defense and give in evidence to the court or jury all the facts legitimately bearing on the issues in the cause to be considered and weighed by the tribunal trying the same, such acts of the legislature are not unconstitutional. *pp. 79, 80.*

State *v.* Beach.

EMBEZZLEMENT.—*Insolvency of Bank at Time Deposit is Made.—Statute Construed.*—When money, or any part thereof, deposited with a banker is not paid as required by the implied contract between the bank and the depositor, on account of the insolvency of the banker when the deposit was made, the money so deposited is lost to the depositor within the meaning of section 2031, Burns' R. S. 1894. *p. 84.*

STATUTORY CONSTRUCTION.—*Embezzlement by Banker.—Loss of Deposit.*—Where an insolvent banker receives a deposit, and by reason of such insolvency the depositor is deprived of his contract right to have the money refunded upon demand, the deposit, within the purview of section 2031, Burns' R. S. 1894, is then lost to the depositor as the court in the construction of a statute is not restricted to the primary meaning of a word used where from a consideration of the whole, and every part of the statute, it is plain that the word is used in a different sense. *pp. 86, 87.*

EMBEZZLEMENT.—*Indebtedness of Depositor to Bank.—Statute Construed.*—A depositor of money in an insolvent bank is not indebted to it within the meaning of section 2031, Burns' R. S. 1894, so as to relieve the banker from criminal liability for receiving money during insolvency merely because the bank held his unmatured promissory note for $500.00 where such depositor held a certificate of deposit for $1,500.00 for money deposited in such bank prior to the execution of the note; and after executing the note, and before making the deposit when the bank had become insolvent, had deposited at different times certain sums aggregating $838.18. *pp. 89–92.*

EVIDENCE.—*Embezzlement by Banker.—Receiving Deposits When Insolvent.—Proof of Insolvency.*—In a prosecution against a banker for receiving a deposit when bank was insolvent the deed of assignment, inventory of property, reports of sales, reports of trustee showing receipts and expenditures and claims allowed, and the order of the court authorizing the trustee to compound claims and all proceedings had thereunder are admissible in evidence on the issue of the insolvency of the bank. *pp. 93, 94.*

From the Parke Circuit Court. *Reversed.*

*W. A. Ketcham,* Attorney-General, *Howard Maxwell, S. B. Davis, S. D. Puett, I. N. Pierce* and *M. C. Hamill,* for State.

*Lamb & Beasley, McNutt & McNutt* and *S. R. Hamill,* for appellee.

MONKS, J.—Appellee was prosecuted and acquitted in the court below on the charge of embezzlement. The indictment was based upon section 2031, Burns' R. S. 1894 (Acts 1891, p. 395), which is as follows:

"If any banker, or broker, or person or persons, doing a banking business, or any officer of any banking company, or incorporated bank doing business in this state, shall fraudulently receive from any person or persons, firm, company, corporation, or from any agent thereof, not indebted to said banker, broker, banking company or incorporated bank, any money, check, draft, bill of exchange, stock, bonds, or other valuable thing which is transferable by delivery, when at the time of receiving such deposit, said banker, broker, banking company or incorporated bank is insolvent, whereby the deposit so made shall be lost to the depositor, said banker, broker or officer, so receiving such deposit, shall be deemed guilty [of] embezzlement, and upon conviction thereof, shall be fined in a sum double the amount of the sum so embezzled and fraudulently taken, and in addition thereto may be imprisoned in the state prison not less than one, nor more than three years.

"The failure, suspension or involuntary liquidation of [the] banker, broker, banking company or incorporated bank, within thirty days from and after the time of receiving such deposit, shall be *prima facie* evidence of an intent to defraud, on the part of such banker, broker or officer of such banking company or incorporated bank."

After the state had introduced its evidence and rested, the court, on motion of appellee, instructed the jury to return a verdict of not guilty. To which instruction the State excepted and reserved the question.

This is the first error assigned.

State *v.* Beach.

It is insisted by appellee that neither count of the indictment states a public offense, and that, therefore, it was proper for the court to instruct the jury to find appellee not guilty. The question of whether an indictment states facts constituting a public offense should be presented by a motion to quash, or a motion in arrest. In this manner only can the rights of the State be properly protected. If a verdict of not guilty is directed by the court, for the reason that the indictment or information does not state a public offense, and the court should be in error, unless the record shows that the defendant was acquitted for the reason stated, the rights of the State to again prosecute for said offense may possibly be lost under the doctrine that the defendant has been once in jeopardy. 1 Bishop Crim. Law, section 1021; 3 Greenleaf's Ev. section 35; *State* v. *Williams*, 5 Md. 82; *People* v. *Barrett*, 1 Johns. 66; *Comm.* v. *Purchase*, 2 Pick. (Mass.) 525; *Vaux's Case*, 4 Rep. (Coke) 44; 2 Hale, P. C. 248; 2 Hawk. P. C. ch. 35, section 8; 1 Starkie, Cr. Pl. (2d ed.) 320; 1 Chit. Cr. Law, 458; Archb. Cr. Pl. & Ev. (19th ed.) 143; In Russ. Crimes (6th ed.) 48.

There is no hardship to a defendant in requiring him to present the questions of the sufficiency of the charge against him by motion to quash, or a motion in arrest, so that he may again be indicted for the same offense, and such should be the practice of the trial court.

The only objection pointed out to the indictment is "that it charges that appellee unlawfully, feloniously and *fraudulently*, received from John Bruns a certain deposit, to-wit, forty-five dollars, etc., when the fact constituting the fraud should have been set out." The offense charged is a statutory one, that is, created and defined by statute, and in such case it is sufficient as a general rule to charge the offense in the

language of the statute, as was done in this case. *Ritter* v. *State*, 111 Ind. 324, and cases cited; *Trout* v. *State*, 111 Ind. 499.

It was not necessary, therefore, to set out in the indictment the facts constituting the fraud, but it was sufficient to charge the offense in the language of the statute, or in terms substantially equivalent thereto.

Counsel for appellee say "that the material allegations in each count of the indictment are:

1.—The defendant was a banker and person doing a banking business.

2.—That as such banker and person doing a banking business the defendant unlawfully, feloniously and fraudulently received from John Bruns a certain deposit, to-wit, forty-five dollars.

3.—At the time of receiving the deposit the defendant was insolvent.

4.—At the time of receiving the deposit the said John Bruns was not indebted to said defendant.

5.—That said deposit was lost to said John Bruns."

Counsel, however, insist that even if the indictment is sufficient "that there was no proof of any of the foregoing allegations except the first and third; in other words, that there was no evidence upon said second, fourth and fifth allegations; that to establish the allegation that appellee fraudulently received the deposit from John Bruns there must be evidence showing a design on the part of appellee to get Bruns to deposit the money by a trick, artifice, or some representation."

The second section of the act upon which this prosecution is based expressly provides that the failure, suspension, or involuntary liquidation of a banker within thirty days after receiving such deposit shall be *prima facie* evidence of intent to defraud on the part of such banker.

It was established by the evidence that appellee had failed and suspended within thirty days after the deposit was made. Appellee earnestly contends that this part of the act is unconstitutional, that it deprives the accused of the benefit of the presumption of innocence.

In Voght v. State, 124 Ind. 358, this court held that the legislature had the power to enact provisions like the one now in question. The court said: "It has often been held that the legislature, in defining a crime, may also enact that proof of facts which are universally recognized as indicating guilt shall be sufficient prima facie evidence of the commission of an offense defined by statute. For example, it is enacted in section 1817, R. S. 1881, that the failure of a public officer to account for and pay over public money which has come into his hands, shall be prima facie evidence of the embezzlement thereof, and other statutes declare what shall be deemed sufficient evidence in cases of rape, seduction, receiving stolen goods, obstructing highways, and the like."

We think it clear that the legislature has the power to prescribe rules of evidence and methods of proof. A law which would in effect exclude the evidence of a party and thereby deny him the right to be heard, would deprive him of due process of law. A law which provides that certain facts are conclusive proof of guilt would be unconstitutional, as also would one which makes an act prima facie evidence of crime which has no relation to a criminal act, and no tendency whatever to establish a criminal act. If, however, the legislature in prescribing the rules of evidence in any class of cases leaves a party a fair opportunity to establish his case or defense and give in evidence to the court or jury all the facts legitimately bearing on the issues in the cause to be considered

State *v.* Beach.

and weighed by the tribunal trying the same, such acts of the legislature are not unconstitutional.

It has repeatedly been held that the legislature has the right to, declare what shall be presumptive, or *prima facie* evidence of any fact. *Vogt* v. *State, supra; Morgan* v. *State,* 117 Ind. 569; *Richard* v. *Carrie,* 145 Ind. 49; *State* v. *Sattley,* 131 Mo. 464, 33 S. W. 41; *State* v. *Buck,* 120 Mo. 479, 25 S. W. 573; *State* v. *Kingsley,* 108 Mo. 135, 18 S.W. 994; *Ess* v. *Bouton,* 64 Mo. 105; *Heman* v. *Wolff,* 33 Mo. App. 200; *Adkins* v. *Chicago, etc., R. W. Co.,* 36 Mo. App. 652; *Hand* v. *Ballou,* 12 N. Y. 541; *Howard* v. *Moot,* 64 N. Y. 262; *Commonwealth* v. *Williams,* 6 Gray 1; *Commonwealth* v. *Wallace,* 7 Gray 222; *Commonwealth* v. *Rowe,* 14 Gray 47; *Holmes* v. *Hunt,* 122 Mass. 505, 23 Am. Rep. 381; *State* v. *Hurley,* 54 Me. 562; *Board, etc.,* v. *Merchant,* 103 N. Y. 143, 8 N. E. 484; *People* v. *Cannon,* 139 N. Y. 32, 34 N. E. 759; *Delaplaine* v. *Cook,* 7 Wis. 43; *Allen* v. *Armstrong,* 16 Ia. 508; *Wright* v. *Dunham,* 13 Mich. 414; *Gage* v. *Caraher,* 125 Ill. 447, 17 N. E. 777; *Chicago,etc., R. R. Co.* v. *Jones,* 149 Ill. 361, 37 N. E. 247; *Am. Trust and Sav. Bank* v. *Gueder, etc., Mfg. Co.,* 150 Ill. 336, 37 N. E. 227; *Robertson* v. *People,* 20 Colo. 279; Black on Intoxicating Liquors, section 60; 2 Rice on Evidence, sections 807, 808; 3 Rice on Evidence, section 27; Wharton on Criminal Evidence, section 715a.

In *People* v. *Cannon, supra,* the court on page 42 said: "The power to enact such a provision as that under discussion is founded upon the jurisdiction of the legislature over rules of evidence, both in civil and criminal cases. This court has recently had the question before it. (*Board of Excise Commrs.* v. *Merchant,* 103 N. Y. 143). The act in that case provided that whenever any person was seen to drink in a shop, etc., spirituous liquors which were forbidden to be drank therein

State v. Beach.

it should be *prima facie* evidence that such liquors were sold by the occupant of the premises or his agent with the intent that the same should be drank therein. The defendant was an occupant of premises where liquor could not be legally sold to be drank there, and was prosecuted for selling the same in violation of the act. The only evidence of a sale by the accused occupant was the fact that a person was seen to drink liquor upon the premises, and a conviction was asked for under the provisions of the act quoted. The defendant was convicted, and his counsel urged that the act was unconstitutional on the ground that it violated the constitutional guarantees of due process of law and trial by jury. It was held that the claim was unfounded and that the general power of the legislature to prescribe rules of evidence and methods of proof was undoubted and had not been illegally exercised in that case."

In the *State* v. *Buck, supra,* it was held after a full review of the authorities that a section of the statute of that State which makes it a criminal offense for an officer of a bank to receive a deposit knowing the bank to be insolvent, and providing that the subsequent failure of the bank, shall be *prima facie* evidence of such knowledge is not in violation of a constitutional provision that the right of trial by jury shall remain inviolate.

In *State* v. *Kingsley, supra,* it was held that section 1 of act of 1891 (Laws of 1891, p. 159), which provides that every person who shall obtain board or lodging by means of any trick or deception, false or fraudulent representation, and shall fail or refuse to pay therefor, shall be held to have obtained the same with intent to cheat and defraud, and shall be deemed guilty of a misdemeanor, is not in conflict with the constitution

of the state, upon the ground that it denies to the accused a trial by jury; that under the act it is left to the triers of facts to determine whether the board was obtained by means of false or fraudulent representations and not paid for, and that the legislature had the power to declare these facts, when proved, to constitute evidence of an intent to cheat and defraud.

The Supreme Court of Illinois, in considering this question under a law of that state, which is substantially the same as the act now in question in *Meadowcroft* v. *The People*, 163 Ill. 56, 45 N. E. 991, said: "If one is a banker or person doing a banking business, and receives on deposit the money of his customer, it is to be presumed that he knows, at the time of receiving such deposit, whether or not he is solvent. At all events, as he holds himself out to the public and to his customers as being possessed of money and capital, and therefore to be safely trusted, it is his duty to know, and he is under all ordinary circumstances, bound to know, that he is solvent, and it is criminal negligence for him not to know of his own insolvency. * * * In cases of the failure, suspension or involuntary liquidation of a banker within thirty days after he has received a deposit from his customer, it cannot fairly be said that the fact of such failure, suspension or involuntary liquidation does not tend to show that he was insolvent when he received the deposit, and since, if he was then insolvent, he is presumed to have known of such insolvency at that time, and it is criminal negligence, under all ordinary circumstances, for him not then to have known of it, the inference that when he received such deposit it was with a fraudulent intent on his part is not so purely arbitrary, unreasonable, unnatural or extraordinary as would justify the courts in saying that such a failure within thirty days had no fair relation to or connec-

tion with the existence of a fraudulent intent at the time of the deposit, and that therefore the act of the legislature is unconstitutional, null and void."

The statute enables the state to make *prima facie* proof of the intent to defraud by showing the failure, suspension, or involuntary liquidation of the banker, broker, banking company, or incorporated bank, as the case may be, within thirty days after the deposit was received. The burden of proof is not changed. The party connected with a bank as owner or officer has ample opportunity to make his defense. He can be a witness on his own behalf and if the bank has been robbed since the deposit, or a sudden or unexpected failure of its correspondents not known by the officer or owner of the bank when the deposit was received, has brought about its insolvency and failure, suspension or involuntary liquidation, such and other matters of like character are easy of explanation, and upon the whole evidence the burden is upon the prosecution to establish his guilt beyond a reasonable doubt.

In *Barker* v. *State*, 54 Wis. 368, the court said: "The manifest object of the statute in question was to suppress the business of banking or brokerage by any insolvent person, company or corporation. It therefore inflicts punishment upon persons so engaged, knowing the fact. * * * A bank implies capital, and capital invites confidence. A man holding himself out as a banker * * * thereby gives public proclamation that he has money, and property readily convertible into money, in his possession and subject to his control, and for that reason he may be safely trusted. It requires no argument to show that such assurance is most inviting and influential with the mass of the people, especially with those unacquainted with the history and character of the man. With them the banker

\* \* \* is entrusted with the money merely because he is a banker \* \* \*, and hence supposed to have surplus capital as a standing guaranty of his agreement and his integrity. For an insolvent banker, company or corporation to continue the business of banking is to hold out assurances of responsibility and surplus capital where neither exists. To do so knowingly is to secure the confidence, and hence obtain the money, of the ignorant and unwary by an implied deception."

The next contention is as to whether there was any evidence that said deposit was lost to said John Bruns. We think it is clear that when money, or any part thereof deposited with a banker is not paid, as required by the implied contract between the bank and the depositor, on account of the insolvency of the banker when the deposit was made, then the money is lost to the depositor within the meaning of the statute. But appellee contends that it cannot be known whether the money is lost to the depositor in this case until the voluntary assignment made by him which is now in the hands of the court is settled. If such is a proper construction of this law, it could with as much reason be urged that it cannot be known what will be lost to the depositor until the death of appellee and his estate is finally settled. The Supreme Court of Illinois, in *Meadowcroft* v. *The People, supra*, has fully answered appellee's contention. The court said: "The words of the statute are, 'Whereby the deposit so made shall be lost to the depositor.' When lost? At the time that the deposit is received by the insolvent bankers? Or when, by the failure, suspension or involuntary liquidation of the bankers, by reason of insolvency, the depositor is deprived of the use and benefit of his deposit? Or is it when, upon final settlement of the insolvent estate, the exact amount that

will not be repaid by the dividends declared is definitely ascertained?   Or is it after the death of the bankers, and the final settlements of the testate or intestate estates left by them, and when, for the first time, it can be known just how much, if any, of the deposit is so absolutely lost to the depositor as that it will never be returned to him?

"The statute provides that if any bankers shall receive any money when, at the time of receiving such deposit, said bankers are insolvent, 'whereby the deposit so made shall be lost to the depositor,' said bankers 'so receiving said deposit shall be deemed guilty of embezzlement,' and upon conviction thereof shall be fined 'in a sum double the amount of the sum so embezzled and fraudulently taken.'   The expressions, 'the deposit so made' and 'so receiving said deposit,' if literally and rigidly construed, would seem to imply the whole amount of the deposit; and the expression, 'the amount of the sum * * * fraudulently taken,' if alone considered, would seem to point to the time when the deposit is first received.   Upon our first examination of the statute we were inclined to the conclusion that the crime denounced therein was complete at the time of receiving the deposit, provided the bankers were then insolvent, and that the sum of money deposited and 'fraudulently taken' would in all cases be the amount that, within the contemplation of the statute, was 'lost to the depositor,' but upon further consideration, we are satisfied of the impropriety of such conclusion.

"As we have already seen, one of the essential elements of the statutory offense is that the deposit 'shall be lost to the depositor.'   The word 'shall' is in the future tense, and is indicative of a future event.   Although the bankers are insolvent and receive a deposit while so insolvent, yet it does not necessarily result

that either the whole or any portion of the sum deposited is either lost to the depositor or embezzled by the bankers. It may well be that the sum so deposited is, in view of the existing insolvency of the bankers, 'fraudulently taken,' by them, but such fraudulent taking does not, in and of itself, constitute the offense. It is only when 'the deposit so made shall be lost to the depositor' that the bankers 'shall be deemed guilty of embezzlement,' and the fine is to be a sum that is 'double the amount of the sum *so embezzled* and fraudulently taken.' If the entire amount of the deposit is paid back to the depositor, or paid out upon his checks prior to failure, suspension or involuntarily liquidation of the bankers, it is plain that no money of the depositor has been either lost to such depositor or embezzled by the bankers; and it is equally plain that if a part of it is checked out and paid before such failure, suspension or involuntary liquidation, then the amount so paid is neither lost nor embezzled. * * * When a deposit is received by bankers, they at the time being insolvent, and it, or any part of it, is not paid back on demand, as contemplated by the agreement between them and the depositor,—and this because of the insolvency of such bankers and their consequent inability to repay,—and the bankers fail, suspend or go into involuntary liquidation, then, within the true intent and meaning of this statute, * * * such sum, or such part of it as has not been so paid back, is 'lost to the depositor,' and in contemplation of the law 'embezzled' by the bankers."

The crime created by the statute is consummated when the insolvent bankers fraudulently receive the deposit, and by their failure, suspension, or involuntary liquidation by reason of insolvency, the depositor is deprived of the benefit of his deposit, or such portion of it as has not already been paid back to him,

or upon his checks. The depositor is then, at that time, deprived of his contract right to have the money refunded upon demand, or paid out upon checks drawn by him, and, being deprived of this right, the deposit, within the purview of this statute, is then "lost to the depositor." This meaning placed upon the word "lost" is not unauthorized, for the rule is that, in construing a statute, the court is not restricted to the primary meaning of a word used where, from a consideration of the whole and every part of the statute, it is plain that the word is used in a different sense. *City of Springfield* v. *Green*, 120 Ill. 269, 11 N. E. 261.

The view we have taken carries into effect the legislative intention, and gives force and vitality to a wholesome statute. On the other hand, to construe the statute as meaning that there can be no conviction until it can be clearly and definitely ascertained what the exact amount is that can never be recovered and is permanently and absolutely lost, would utterly defeat the object of the statute. It would seem that such amount can never be so ascertained until after the death of the banker, and the final settlement of his estate by his administrator. And, even if it should be held that what the statute contemplates is the ascertainment of the amount of the deficit after the distribution of the proceeds of the property that the banker owned at the time of his suspension of business, yet it can be readily seen that usually, in fact, almost always, many years would pass before final settlement of that estate would be made, and in the meantime the statute of limitations would frequently bar any prosecution for the offense committed. And it is to be borne in mind that it is important the exact amount of the deposit lost to the depositor shall be definitely ascertained, for the statute expressly provides that the fine imposed in case of conviction shall be a sum

double the amount of the sum so embezzled and fraudulently taken.

There is authority, as well as reason, to sustain the conclusions we have reached in regard to the meaning of this statute. In *Queenan* v. *Palmer*, 117 Ill. 619, 7 N. E. 613, the words of the statute were, "make good all losses to depositors or others." The court there said: "What is meant by the term 'losses,' as used in the statute? It would seem, from the argument, that defendants would restrict the meaning of the term 'losses' to signify only the difference between the depositor's claim, and what he might realize by an action or bill against the insolvent bank. * * * It cannot be that the term 'losses' was used, in this connection, in that restricted sense as to mean that which can never be recovered. Otherwise there might be no such thing as any 'losses' to the depositors in this case, for there might exist a remedy against the bank for one portion, and against the stockholders for the residue, and what would there be left for the term to attach? Obviously, the term 'losses' was used in a more general sense, and one usually attached to it by common understanding. In its most general sense, the word 'loss,' means any deprivation. In some instances it may mean that which can never be recovered, and in others that which is simply withheld or that of which a party is dispossessed. * * * The suspension of the bank, by reason of insolvency, was an absolute refusal to repay the deposits to the owners, and operated as a deprivation,—a withholding of the same from the depositors,—and that is a loss, in the ordinary acceptation of that word. A portion of the value of such deposits, or all, might ultimately be recovered from either the bank or stockholders, but the deposits are lost to the owner. After the suspension of the bank, nothing remained of his deposits but the

State *v.* Beach.

obligation of the bank or the stockholders to pay the value. That obligation might, or might not, be of value to him, depending on the fact of the solvency or insolvency of both the corporation and the stockholders. At all events, the funds have been wasted by the corporation becoming partially or totally insolvent, and that is a loss to the depositor, in the sense that term is used in the statute, and his right to proceed against the stockholders arises at once. Any other definition of this word 'losses,' would be inconsistent with the context, and would afford no adequate security to the depositors, or others dealing with the bank."

It follows that it was sufficient to establish the allegation that the deposit was lost to the depositor, to prove that the deposit was made, and that when made, the appellee was insolvent, and that the depositor was deprived of the use of the same, or any part thereof, by reason of such insolvency. These facts were established by the evidence in this cause.

It is next urged that the evidence shows that Bruns, the depositor, was indebted to the bank. The evidence shows that Bruns held a certificate of deposit, issued to him by appellee March 16, 1893, for $1,500.00, payable six months after date with four per cent. interest; that in June, 1893, Bruns desired to withdraw $500.00 of the $1,500.00 evidenced by the certificate of deposit; that appellee refused to permit him to do so, unless he would lose the interest that had accumulated upon the certificate. They finally agreed that appellant would let Bruns have $500.00, and he was to execute a note to appellant therefor to fall due just after the certificate of deposit, and to be paid out of the $1,500.00, evidenced by the certificate.

Afterwards Bruns deposited money in the appellee's bank from time to time until the 10th of August, 1893, when he deposited $45.00, which is the deposit upon which this prosecution is predicated. The $45.00 de-

posited on August 10, with what Bruns had deposited before that time and after he executed the $500.00 note, amounted to $838.18. Did this constitute an indebtedness of Bruns to appellee within the meaning of the statute? It clearly appears that the general deposit, not including the $45.00, was more than enough to pay the $500.00 note held by appellee on Bruns, and that after deducting the note from the total amount appellee owed Bruns, the balance in Bruns' favor was over $1,800.00, not including the $45.00 deposited August 10, 1893. Much evidence was admitted upon this issue that was immaterial.

The rule is well settled that a bank has the right to apply the deposits of any depositor to the payment of any matured debt of the depositor to the bank. *Lamb* v. *Morris*, 118 Ind. 179, 4 L. R. A. 111, and cases cited; *Bedford Bank* v. *Acoam*, 125 Ind. 584, 9 L. R. A. 560; *Second Nat'l Bank, etc.*, v. *Hill*, 76 Ind. 223.

This rule results from the right of set off which exists between persons occupying the relation of debtor and creditor. The right of a bank, therefore, to so apply deposits, does not exist, as a general rule, in any case where the bank could not successfully interpose the indebtedness of the depositor to the bank as a set off in an action by the depositor to recover the balance on deposit due him. *Lamb* v. *Morris*, *supra*, and cases cited; 1 Morse on Banks, section 326.

It follows that the right of the bank to so apply deposits does not obtain unless the indebtedness has matured. *State Bank* v. *Armstrong*, 4 Dev. 519; *Giles* v. *Perkins*, 9 East 12; *Jordan* v. *Nat. Shoe and Leather Bank*, 74 N. Y. 473; *Merchants' Nat. Bank* v. *Ritzinger*, 20 Ill. App. 29; *Commercial Nat. Bank* v. *Proctor*, 98 Ill. 558; *Zelle* v. *German Sav. Institution*, 4 Mo. App. 401; 1 Morse on Banks, section 329; 2 Am. and Eng. Ency. of Law, 99, and note.

In this case, therefore, appellee had no right to apply the deposit of $45.00 in question, or any part of the general deposit, to the payment of the $500.00 note or any part thereof, for the reason that the same did not mature until in September, 1893.

If Bruns, the depositor, had been indebted to the appellee, a banker, in any sum equal to, or in excess of the deposit, and the same had been due and payable when the deposit was made, the deposit could have been applied in payment of such indebtedness, and Bruns would have been indebted to appellee within the meaning of the statute when the deposit was made. In such case the deposit would not be lost, but in the case at bar, the $45.00 deposited by Bruns was, as we have seen, lost to him within the meaning of the statute, because he was deprived of the use thereof. Appellee had no right to apply the sum deposited, or any part thereof, on the $500.00 note held by him; the depositor was entitled to the use of the amount deposited on demand.

The meaning of the word lost, in the statute, clearly indicates that the indebtedness of the depositor to the bank or banker must equal or exceed the deposit, and be such that the bank has the legal right to apply the deposit as a payment thereon. Because, in all other cases, it would deprive the depositor of the use of all or a part of the money deposited, which in such case it would not. In such case, if the bank or banker had not failed, the depositor would not be entitled to demand and receive the money deposited, for the reason that the bank or banker had a lien thereon to secure a matured indebtedness, and could apply it as a payment thereon. But if appellee had not failed he was bound to pay Bruns' check for the $45.00, and all other money on general deposit. When, therefore, appellee, on account of his insolvency and failure, did

not pay the deposit of $45.00, he deprived Bruns of the use thereof, and it was lost to him within the meaning of the statute.

If lost to Bruns within the meaning of the statute, then he was not indebted to appellee within the meaning thereof. For it is only when the same is not lost to the depositor within the meaning of the statute because applied as a payment on his matured indebtedness that he is indebted to the bank or banker within the meaning thereof. It was not the intent of the legislature to make it a crime for an insolvent bank or banker to receive a deposit from one who was indebted to such bank or banker to the extent such indebtedness was due and payable, for the reason that such deposit could be rightfully applied by the bank or banker as a payment on such indebtedness, and for the further reason that the depositor was not entitled to demand and receive such deposit from the bank. The law was intended to protect from its penalties the persons and corporations named in the act, though insolvent when they received the deposit, as a payment of an indebtedness, or in any way that the same could be rightfully applied as a payment of any indebtedness due the bank from the depositor. In a number of states the laws upon this subject make no such exceptions, but the courts in some of such states have made substantially the same exception which the act itself makes in this State.

It follows, from what we have said, that the court erred in instructing the jury to return a verdict of not guilty. The question of the guilt or innocence of appellee should have been submitted to the jury under proper instructions.

On August 12, 1893, the second day after the deposit was made, appellee, before 9 o'clock a. m., made an assignment of all his property to a trustee, for the

benefit of all his creditors, under the provisions of the laws of this State on that subject. After such assignment was made, the property, its sale, the collection and compounding of rights and credits due the assignor, the allowance and payment of claims against the assignor, and the reports and discharge of the trustee were under the control and subject to the order of the circuit court. Sections 2899-2920, Burns' R. S. 1894. By virtue of a deed of assignment made by an assignor under the foregoing sections, all the property of the assignor becomes subject to the trust, whether described in the deed and schedule or not. *Hasseld* v. *Seyfort, Assignee*, 105 Ind. 534, and cases cited.

After the assignor has, by his deed of assignment to a trustee for the benefit of all his creditors under the statute, given the court jurisdiction, the proceeding is one *in rem*, by which he is bound until the same is disposed of by final settlement and discharge of the trustee, and the surplus, if any, is returned to him. He has the right, at all times during the pendency of the assignment in court, to object to the action of the trustee, and ask the court in its discretion to direct or require the trustee as to his conduct in the settlement of such trust. He is bound by the proceedings, orders and judgments of the court having jurisdiction thereof, until the same are set aside or vacated.

The deed of assignment and schedule filed therewith, and the affidavit of the assignor annexed thereto, that the same contained a statement of all his property; the inventory; the reports of all sales of property, and the orders of the court confirming the same, if any, the report of the trustee, showing the receipts and expenditures and claims allowed, and the order of the court thereon, and the order of the court authorizing the trustee to compound or compromise any claim belonging to the assignor, are all competent evidence on

behalf of the State upon the issue of the insolvency of appellee. These papers and proceedings, and orders tended to show the amount and value of appellee's property at the time the deposit was received, on August 10th. The court, therefore, erred in refusing to permit appellant to read in evidence the inventory of appellee's property, made and filed by the trustee; the petition of the trustee to compound the claim against Henry S. Richardson, and the order of the court in respect thereto, and the first report of the trustee showing receipts and disbursements and claims filed and allowed.

During the progress of the trial the State also offered in evidence the appraisement of appellee's property, made by two reputable householders, under section 2905, Burns' R. S. 1894, and filed by the trustee, which was excluded by the court. The evidence showed that appellee was present when the appraisement was being made, whether all the time or not is not clear, and aided in the appraisement by his advice, and much of the property was appraised at what he said it was worth; and the same seems to have been made largely under his supervision and direction. We think, with this showing, the court should have allowed the appraisement to be read in evidence.

The foregoing evidence, offered and excluded, was not conclusive, but was proper to be considered by the jury with all the other evidence in the case on the issue of insolvency, and given such weight in the determination of that question by the jury, as the jury believed the same was entitled to.

During the progress of the trial the court permitted appellee to read in evidence, over the objection of the appellant, the $500.00 note of John Bruns, dated June 24, 1893, due September 22 to 25, 1893, and the proof of the claim of John Bruns for the general deposit

of $836.18, with a credit given for the $500.00 note. It is clear, from what we have said concerning the meaning of the word "indebted" in the statute, that the court erred in admitting in evidence said note and proof of claim.

The appeal is sustained at the cost of appellee.