142 So. 116

### STURDIVANT v. STATE.

5 Div. 874.

Court of Appeals of Alabama.

May 24, 1932.

Jas. W. Strother, of Dadeville, for appellant.

Thos. E. Knight, Jr., Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

**SAMFORD, J.**

The prosecution in this case is brought under section 3403 of the Code of 1923, and not under section 3965. Under this prosecution the element of fraudulent intent does not enter into the issues. If, being an individual banker, officer, or manager of an incorporated bank or individual banker, he receives a deposit for such bank, knowing or having good reason to believe at the time such deposit is made that such bank or individual banker is insolvent or in a failing condition, the defendant would be guilty under section 3403, supra, either of a misdemeanor or a felony, depending upon the amount of the deposit.

The indictment in this case follows substantially the language of the statute and is sufficient to charge the offense. 3 R. C. L. 499; 7 Corpus Juris, 582.

The statute under which this prosecution is brought made the rule of evidence that: "The failure of any bank shall be prima facie evidence of the knowledge on the part of said individual banker, officer, or manager of any incorporated bank or individual banker, that the same was insolvent or in a failing condition when the money or property was received on deposit, provided such deposit was received or accepted within ten days before said individual banker or incorporated bank closed its doors for business. The facts and circumstances of such failure may be sufficient to rebut the presumption of guilt."

So far as we know or have been informed by brief of counsel, the constitutionality of this part of the statute has never been passed upon in this state, but statutes of similar import where there is some rational connection between the fact proved and that presumed, and where it does not preclude the presentation of the defense to the main fact, have been universally upheld both in this state and in other jurisdictions. Ex parte Woodward, 181 Ala. 97, 61 So. 295; Dees v. State, 16 Ala. App. 97, 75 So. 645; 51 A. L. R. 1154 note b; State v. Beach, 147 Ind. 74, 48 N. E. 949, 46 N. E. 145, 36 L. R. A. 179.

The evidence for the state tended to prove that this defendant was a joint owner with his brother Herbert of the Sturdivant Bank, an unincorporated banking institution doing a banking business under the laws of this state, at Dadeville, Ala., in the county of Tallapoosa; that on December 9, 1930, this defendant, acting for the bank, received a deposit of $273 from D. Hodo, for the credit of Jack Walker; that on December 17th following the bank closed its doors for business and by voluntary resolution of its owners was turned over to the Alabama banking department for liquidation. This made out a prima facie case for the state and, in the absence of evidence rebutting the presumption raised by the statute, was sufficient upon which to base a verdict of guilt. Authorities supra.

The foregoing having been developed on the trial, the burden then shifted to the defendant to introduce evidence which would generate in the minds of the jury a reasonable doubt of the guilt of the defendant. As to this it is admitted that defendant was a part owner of the bank; that he was one of its officers; that he aided in its management, received deposits, and received the deposit in this case, kept the individual deposit ledgers, and had access to all of the books and records of the bank. The questions open under the evidence were: (1) Was the bank insolvent or in a failing condition; (2) did the defendant know or have good reason to believe this at the time he received the $273 deposit from Hodo?

On the above issues it was relevant to inquire into the loans made by the bank, the solvency of the loans, the relationship of parties borrowing money from the bank, and the securities held by the bank to secure these loans. It was also relevant to inquire as to the amount of cash on hand and on deposit with other banks and to ascertain whether this amount of cash had fallen below the legal requirement for reserves at the time this deposit was received.

Most of this evidence was developed and brought out by the state during its direct examination, whereas it more properly should have been brought out on rebuttal, but being relevant and admissible as tending to prove the guilt of defendant, the time of its introduction, though irregular, is immaterial.

The defendant undertook to show and offered evidence tending to prove that while he was a part owner of the bank and kept the individual ledger accounts, i. e., the accounts showing individual deposits, he did not keep the books showing the condition of the bank or the amount of its assets or liabilities; that that part of the management fell to Herbert, who kept these books and made up the statements for the banking department; and that such a statement had been made and shown to defendant on November 20th showing the bank to be solvent and he knew nothing to the contrary until several days after this deposit was made. There was evidence and it is not controverted that by voluntary resolution the bank closed its doors for business on December 17th making a prima facie case for the state, and there is evidence tending to prove that the bank had made some improvident, and we might say irregular, loans

during the time it was doing a banking business; all of which was relevant on the question of the solvency of the bank and defendant's knowledge of its financial condition.

■ Being an expert accountant, the witness Adams was properly allowed to testify that there were $6,900 of unpaid checks in the bank when he took charge and that there was not sufficient cash in the vault with which to pay these checks. These were matters of calculation and a shorthand rendition of facts. Jones v. Keith, 223 Ala. 36, 134 So. 630.

■ Under the law (Code 1923, § 6337), the bank was not allowed to reduce its cash reserve below 15 per cent. of its demand deposits, and it appearing from the evidence that the cash reserve had been so reduced the banking department was justified in taking over the bank for liquidation for the protection of the depositors and the public, but the fact that the cash reserve had been reduced below the 15 per cent. does not necessarily mean that the bank was insolvent or in a failing condition. A bank is solvent when it has enough assets to pay, within a reasonable time, all of its liabilities through its own agencies, and is insolvent when unable to meet its liabilities as they come due in the ordinary course of business. 7 Corpus Juris, 727 (482). In this case the evidence is that on December 9th the bank was still paying its checks in the usual course of business and had on hand in cash and on deposit in other banks more than the required reserve of 15 per cent. of its demand deposits. There is no evidence to show that the $6,900 of unpaid checks found in the bank were checks drawn by depositors or that they were just claims and due for payment, or when the checks were presented. There is no statement of the financial condition of the bank showing its capital, its assets and liabilities. There is no sufficient evidence in this record whereby this court or a jury could know whether the Sturdivant Bank was insolvent or in a failing condition on December 9th, being the day on which this deposit was taken. There is evidence tending to prove that Herbert Sturdivant knew the condition of the bank, whatever it was; but there is no direct evidence charging Fred Sturdivant with a criminal scienter touching its condition. So that boiled down to its last analysis we have the rebuttable administrative presumption that defendant had knowledge of the insolvency or failing condition of the bank on December 9th when he received this deposit of $273. Per contra evidence tending to prove that defendant did not keep the books showing the financial condition of the bank and did not know its financial condition other than as he was informed by his partner, whose duty it was to keep that part of the books, and from information received from the state bank examiners whose duty it was to examine the bank, and from these sources the bank appeared to be solvent. In addition to this, an entire absence of evidence tending to show the assets and liabilities of the bank as of December 9th, or other evidence from which a jury could legally draw the conclusion that the bank was actually insolvent on the date of the deposit.

While the act of closing the bank for business on December 17th, together with the taking of the deposit on December 9th, created a prima facie case for the state, the facts and circumstances of such failure, as testified to by defendant's witness, were, if believed by the jury, sufficient to rebut the presumption of a guilty knowledge on the part of defendant of facts fixing on him a criminal liability.

■ If the jury should find from the evidence that the facts and circumstances were such as to overcome the prima facie presumption of knowledge and insolvency, then the burden rested upon the state to prove by the evidence beyond a reasonable doubt that on December 9th the bank was actually insolvent, or in a failing condition, and that defendant had knowledge of that fact at the time of receiving the deposit. State v. Dunning, 130 Iowa, 678, 107 N. W. 927; Stewart v. State, 95 Miss. 627, 49 So. 615; State v. Welty, 65 Wash. 244, 118 P. 9.

■ Even if the jury should find from the evidence beyond a reasonable doubt that the bank was insolvent, they must go further and find that the defendant had actual knowledge of that fact or had good reason to believe that at that time the bank was in a failing condition, and the negligence, if any, on the part of defendant to make personal investigation of the books kept by his partner, while admissible in evidence, is not sufficient to charge him criminally with such knowledge as will justify a conviction. State v. Dunning, 130 Iowa, 678, 107 N. W. 927; Eureka County Bank, habeas corpus cases 35 Nev. 80.

■ During the course of the trial and the taking of testimony, the court said, in the presence and hearing of the jury: "He is charged by the law with the knowing the condition of his bank regardless of what some other man told him. It was his bank, he owned ⅔ of it; he was actively in the management of it, vice president of it, the law presumes the condition of his bank, what the examiners said to him would not excuse him. He cannot come in and say he does not know the condition of his own bank." To this action and ruling of the court the defendant then and there duly and legally reserved an exception. From what has been said and the authorities, supra, it will be seen that the foregoing statement of the court is error. Its prejudicial nature cannot be doubted.

Upon the question of the insolvency or failing condition, the bank would be insolvent or in a failing condition: "First, if the bank at the time of the deposit referred to in the indictment, did not have assets sufficient to pay its debts; second, if the bank was financially unable to pay its debts or obligations when they became due." This inability to pay its debts or meet its obligations does not mean a temporary inability occasioned by a sudden and unusual demand for withdrawal of deposits or even a failure of the officers to have enough ready cash in the vault on any particular day to run the bank on that day. It means the inability of the bank to meet its obligations to creditors and depositors in the ordinary course of business and with a reasonable opportunity to get the money from its correspondents by its own efforts and with its own collateral. It is not the unusual and critical periods arising from runs and incidental hysteria of the public that fixes the status of a bank, but the usual and ordinary run of every day business. Ellis v. State, 138 Wis. 513, 119 N. W. 1110, 20 L. R. A. (N. S.) 444, 131 Am. St. Rep. 1022. Paraphrasing from decisions of other courts, the rule is concisely stated to be: A bank is insolvent or in failing circumstances, within the meaning of section 3403 of the Code of 1923, when the bank does not have sufficient assets consisting of real and personal property, bills receivable, notes, obligations to the bank of every character, considering the solvency of the makers, indorsers, and guarantors thereof, and the value of the securities thereon, and stocks and bonds held by the bank as its property to pay its debts and to meet its obligations in a reasonable time and in the ordinary course of business. Fleming v. State, 62 Tex. Cr. R. 653, 139 S. W. 598; Griffin v. State, 142 Ga. 636, 83 S. E. 540, L. R. A. 1915C, 716, Ann. Cas. 1916C, 80; State v. Cramer, 20 Idaho, 639, 119 A. 30; Parrish v. Com., 136 Ky. 77, 123 S. W. 339; Ellis v. State, 138 Wis. 513, 119 N. W. 1110, 20 L. R. A. (N. S.) 444, 131 Am. St. Rep. 1022.

In making this proof each item composing the assets may be inquired into, as well as the individual assets of each partner, and on the question of a knowledge of the financial condition of the bank, the acts of the partners in dealing with the customers of the bank, the making of loans, etc. Take for instance the item of the loan of $5,000 to the Sturdivant estate. Was the loan regular; was it made with the expectation of its being repaid; was it secured by a deposit of collateral; was the money used in payment of the $5,000 shares in the cotton mill; if so, who now owns the shares and what are their value? The same inquiry as to the loan to Marion Sanders of $2,000. If these loans were made in good faith and at a time when the bank was solvent, even if irregular, they could not here be questioned because the defendant is not being prosecuted for the making of improvident or irregular loans, but these loans would have a bearing on the solvency of the bank on December 9th and the defendant's dealings with the loans would tend to show his knowledge of the bank's condition.

For and on account of the rulings of the trial court in conflict with the foregoing opinion, the judgment is reversed, and the cause is remanded.

Reversed and remanded.