JAMES JOHN CAIN A/K/A JOHNNY MELVIN CAIN *v.* STATE OF INDIANA.

[No. 372S33. Filed August 17, 1973. Rehearing Denied September 24, 1973.]

*Robert S. McCain, Harold W. Myers,* of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *A. Frank Gleaves, III,* Deputy Attorney General, for appellee.

ARTERBURN, C.J.*—The sole issue presented on this appeal of a second degree murder conviction is one of the admissibility of hearsay evidence. Our statute, IC 1971, 35-1-54-1 [Burns Ind. Ann. Stat. § 10-3404 (1956 Repl.)], defines the crime of second degree murder as follows: "Whoever, purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree."

At his trial before a jury, the defendant called as a witness his girlfriend to testify to remarks the defendant had made to her in conversation prior and subsequent to the killing. Appellant argues that his remarks to his girlfriend show he had no malicious intent to kill.

The state objected to such conversations on the ground that they were hearsay and self-serving declarations. The following questions were asked of the witness and conferences were had with the Court off the record:

---

* This case was distributed to the writer of this opinion on June 27, 1973.

"Q. Now you tell the jury what Johnny Cain said to you and what you said to him with regards to this fight?

\* \* \*

*Mr. McCain offers to prove, given outside the hearing of the jury:* The defendant will offer to prove that if this witness were permitted to testify and answer the question asked that she would testify that Johnny Cain stated to her that he had been involved in a fight with a man named Simmie Lee Thomas and that Simmie Lee Thomas had hit him in the face and particularly above the eye.

\* \* \*

"Q. You tell the jury what you said to him and what he said to you with regards to Simmie Lee Thomas.

\* \* \*

*Mr. McCain offers to prove, given outside the hearing of the jury:* The witness if permitted to testify would state that the conversation between Johnny Cain and her was to the effect that Johnny Cain said to her first that he was afraid of Simmie L. Thomas; second, that he was not able to handle Thomas physically; third, that he definitely thought that Thomas was out to get him; and fourth, that Johnny Cain told the witness that Thomas had already shot two people."

The Court sustained the objection. It is from this ruling that the Appellant appeals.

The remarks constituted hearsay. That is, they were part of testimony of a witness as to extra-judicial declarations of another person offered for the purpose of proving the facts asserted by that other person. 12 I. L. E. Evidence § 101, p. 533. Therefore, if the declarations are to be admitted, they must be admitted under one of the well-recognized exceptions to the hearsay rule. Appellant appears to suggest that the statements should be admitted as part of the "res gestae." Such a contention is clearly erroneous since the conversations were by no stretch of the imagination close enough temporally or logically to the killing to be part of the "res gestae." 6 WIGMORE ON EVIDENCE § 1746, p. 133-135 (3d ed. 1940).

The statements are also "self-serving" (i.e. tending toward establishing the position of a party-declarant) and are deemed to be too inherently unreliable to be admitted. The application of this principle in criminal cases is well-established in this state and many others. The principle applies to statements made both prior to and subsequent to the act for which the statements are offered as evidence about the intent to do said act. Thus, in an Indiana prosecution for larceny, an offer by the defendant to prove statements negativing an intent to steal made after the larceny occurred was rejected. In affirming, this Court said:

> ". . . the excluded statements were no part of the res gestae, but were in the nature of self-serving declarations, which were open to the suspicion of being part of a hastily formed plan of defense." *Spittorff* v. *State* (1886), 108 Ind. 171, 174, 8 N. E. 911, 913; accord. *Durst* v. *State* (1920), 190 Ind. 133, 128 N. E. 920.

The reasons for this rule have frequently been stated. It is said that:

> "To admit such declarations in evidence in his behalf, would be to allow a party to make evidence for himself, and, if believed, to disprove the imputation of malice, clearly apparent from the circumstances. This would be against all principle, and productive of great evil." *Newcomb* v. *State* (1859), 37 Miss. 383, 399.

It has been recognized that what is involved is a weighing of the elements which make up a fair trial.

> "The rule is not founded on the idea that they [extra judicial declarations] would never contribute to the ascertainment of truth, for very often they might be entirely satisfactory, but there is so much danger, if they were received, that they would most commonly consist of falsehoods fabricated for the occasion, and so would mislead oftener than they would enlighten, that it was found indispensable as a part of the law of evidence to reject them altogether, except under a few peculiar circumstances." *State* v. *Hildreth* (1849), North Carolina 9 Ired. 440, 446, quoted in *State* v. *Outerbridge* (1879), 82 N. C. 617.

Perhaps the primary cause for judicial hostility to such declarations is the fear of the consequences which admissibility would bring forth. "Such declarations on the part of defendant are self-serving, if admitted in the evidence on his behalf, there would be great inducement on his part to fabricate a defense." *Brice* v. *State* (1933), 167 Miss. 255, 260, 148 So. 348, 349.

We base our decision not only on the weight of authority, but on the soundness of the principle as applied to the circumstances before us. Wigmore, a vocal foe of this "self-serving" rule, believed that the fundamental purpose of the Hearsay Rule was to prevent a party from being harassed by evidence not subject to cross-examination, 5 WIGMORE ON EVIDENCE § 1362, p. 3-7 (3d ed. 1940). In the instant case, the defendant could have testified to his intent and would thus have been subject to cross-examination, but instead he exercised his constitutional right and declined to testify. By discussing his alleged lack of intention with his girlfriend after the commission of the offense, the defendant created a situation in which he could attempt to have his girlfriend testify indirectly as to his intent, thus not being subject to cross-examination. In other words, defendant wishes us to admit evidence made immune from cross-examination by his own trial strategy. *State* v. *Beach* (1896), 147 Ind. 74, 43 N. E. 949; *Baltimore and Ohio Southwestern Railway Company* v. *Reed* (1902), 158 Ind. 25, 62 N. E. 488. Thus, we are not forcing upon defendant a choice between constitutional rights when we point out that defendant is attempting to use for himself the constitutional privilege against self-incrimination as a technique for avoiding the equally hallowed constitutional principle of cross-examination. The testimony was both self-serving and hearsay.

Finally, we point out that in reviewing a judgment on appeal it is the duty of the Supreme Court to sustain the action of the trial court if it can be done on any legal ground

on the record. This is true even though the reason given by the trial court might be erroneous, if the ruling can be sustained on another ground. This principle also applies to objections made by an objecting party where the court overrules the same and such overruling can be sustained on any other valid ground to support the trial court ruling. It is only when this court on appeal seeks to reverse the trial court that the objection must be sufficiently specific to inform the trial court plainly of its alleged error. *Notter* v. *Beasley* (1960), 240 Ind. 631, 166 N. E. 2d 643, 93 A. L. R. 2d 905; *General Motors Corp* v. *Review Board* (1970), 146 Ind. App. 278, 255 N. E. 2d 107; 2 I. L. E. Appeals § 472, p. 355.

For these reasons, the ruling of the trial court and its judgment, are hereby affirmed.

Givan and Hunter, JJ., concur, DeBruler, J., concurs in the result with a separate opinion in which Prentice, J., joins.

### OPINION CONCURRING IN RESULT

DeBRULER, J.—Although I concur in the result of the majority opinion, I must disagree with the Court's treatment of the admissibility of the proffered evidence in this case on several grounds.

At the outset I do not believe the majority can apply the doctrine of self-serving declaration to justify the exclusion of this evidence at the trial, since the objections made by the State to this evidence were based solely on hearsay and not, as the majority states, on self-serving declarations. The record discloses the State made the following objections to the witness testifying about conversations with appellant:

"Objection your honor. This is hearsay conversation. It hasn't been shown that this witness witnessed the fight. This is a hearsay conversation and we object to it for that reason.

\* \* \*

"To which question we will object your honor for the reason that it is hearsay and secondly insofar as it involves Simmie Lee Thomas it is not material to the issue in this

case and for the further reason that this conversation is too remote in time from the incident in question. We are concerned with the events that occurred on February 6, 1971."

We have held many times that in order for a party to preserve his rights on appeal he must object to the admission of evidence at trial and state the grounds of his objection. *Wells* v. *State* (1970), 254 Ind. 608, 261 N. E. 2d 865. Since the State chose to rely on the hearsay rule as their sole ground for the exclusion of this evidence I do not believe it is proper for this Court to attribute a different one on appeal. It is particularly inappropriate to do so in a criminal case such as this in which the erroneous trial court ruling excluded an accused's defense evidence, since the selection by this Court of a new and different ground to sustain such ruling, results in a denial of the defendant's fundamental right to be heard by himself and counsel and to make an evidentiary foundation supported by argument which might refute the application of such ground. As an example, in *Combs* v. *U.S.* (1972), 92 S. Ct. 2284, the trial court denied a motion to suppress evidence upon consideration of the merits of the motion. On appeal to the Circuit Court, that court affirmed the trial court on the grounds that the record showed that the defendant had no standing to make the Fourth Amendment claim contained in his motion to suppress. The Supreme Court of the United States granted certiorari and held that the Circuit Court had committed error in disposing of the appeal on the basis of standing, since, although there had been a broad evidentiary hearing on the motion to suppress, neither the parties nor the court had focused upon the standing issue at that hearing and the defendant had not been afforded a meaningful opportunity to establish his standing. The cases and authorities cited by the majority do not support the application of the "duty to affirm" rule to situations like this. I believe there are none.

However, even if the objection of self-serving declaration

was properly before this Court, I would further disagree with its application in this case. Professor McCormick has written in regard to the background and justification for this rule:

"The notion that a party's out-of-court declarations could not be evidence in his favor because of their 'self-serving' nature seems to have originated as an accompaniment of the now universally discarded rule forbidding parties to testify. When this rule of disqualification for interest was abrogated by a statute, any sweeping rule of inadmissibility regarding 'self-serving' declarations should have been regarded as abolished by implication." McCormick, EVIDENCE § 290 (1972).

I believe that the use of the self-serving declaration ground as an exclusion of otherwise relevant and competent evidence has outlived its usefulness, but even if accepted as a viable theory today, I do not believe the facts of this case would give rise to its use as a bar to the admission of evidence. Both of the Indiana cases cited by the majority opinion as support for their position concern only declarations made *after* the criminal act involved and hence the declarations treated in those cases may legitimately be viewed as attempts by the defendant to manufacture a defense in his own behalf. However, where the circumstances of a case indicate that the probability of the trustworthiness of a declaration is high and there is an absence of surrounding circumstances which would point to the probability of the manufacturing of testimony, such declaration should be admitted to the jury in order that they would be able to consider all the relevant evidence and perform their prime functions as a fact finder. The use of this absolute exclusionary rule may work great unfairness on a defendant who is barred from introducing otherwise viable evidence which may tend to demonstrate his innocence while the State on the other hand is free to introduce any incriminating evidence it possesses.

The facts in this case indicate that the statements sought to be admitted here were made in the latter part of January while the shooting took place on February 6 of the same

year. It seems to me, therefore, that such statements as these were made at a time when there was no apparent motive for misstatement on appellant's part and they do not carry with them the overriding dangers of manufactured testimony to be guarded against by the self-serving rule. The total exclusion of evidence which may be important and even crucial to a defendant's case is an overly broad and overly harsh solution to a problem which is essentially one of judging credibility.

I also disagree with the majority's treatment of the hearsay issue in this appeal. The widely accepted definition of hearsay is as follows:

"Hearsay evidence is testimony in court or written evidence of a statement made out of court, such statement being offered as an assertion to show the truth of the matters asserted therein, and thus resting for its value upon the credibility of the out of court asserter." McCormick, EVIDENCE § 225 (1954); *Harvey* v. *State* (1971), 256 Ind. 473, 269 N. E. 2d 759; See also *Indianapolis Newspapers, Inc.* v. *Fields* (1970), 254 Ind. 219, 259 N. E. 2d 651 (Opinion of DeBruler, J., with one Judge concurring.)

The two offers of proof with which we are concerned here actually involve two different types of assertions. The first is the assertion that defendant stated that he was afraid of Simmie Thomas. This should have been admitted into evidence since it is not within the definition of hearsay itself; that is, it is not offered to show the "truth of the matters asserted therein" since no factual occurrences are sought to be established by it.

The other aspects of this conversation that we are concerned with involve the assertion by defendant to the testifying witness that he had been in a fight with Simmie Lee Thomas. Although this comes within the general definition of hearsay it also should be admissible evidence under the well recognized state of mind exception to the hearsay rule. McCormick, EVIDENCE § 294 (1972). This exception urged by appellant in his brief recognizes that when appellant's state of mind

is a legal issue in a case, as it is here when the charge is first degree murder, those circumstances which tend to prove the state of mind of the appellant are admissible into evidence for that purpose. I believe the circumstances outlined here concerning the fight with Simmie Lee Thomas is relevant to explain the purported fear of the appellant regarding Simmie Lee Thomas and would be admissible on the issue of the appellant's state of mind.

I am concurring in the result of this opinion, however, because I believe the record shows that this evidence had already been brought before the jury both by the prior testimony of the witness Mildred Williams and by the testimony of other prosecution and defense witnesses.

Prentice, J., concurs.

NOTE.—Reported in 300 N. E. 2d 89.