## COOLEY v. KELLEY.

[No. 7,761. Filed December 8, 1911. Rehearing denied May 31, 1912. Transfer denied March 6, 1913.]

1. PLEADING.—*Complaint.—Ruling on Demurrer.—Effect as to Subsequent Rulings.—Trial.*—A ruling on demurrer, holding a complaint good, is not binding on a trial court so as to require its subsequent rulings to be in harmony therewith, irrespective of its correctness. p. 693.

2. APPEAL.—*Record.—Findings.—Opinion of Trial Court.*—Where the record on appeal fails to disclose a request that the trial court render special findings, the opinion delivered by the trial court in announcing its decision, although carried into the record, will be regarded merely as a general finding. p. 693.

3. APPEAL.—*Review.—Findings.—Motion for Venire de Novo.*—Overruling a motion for a *venire de novo* is not error where the finding is general, since the motion reaches only matters of form, and can only be sustained when the finding is so defective and uncertain that no judgment can be rendered thereon. p. 693.

4. APPEAL.—*Review.—Findings.—Motion for Judgment Notwithstanding Findings.*—Error cannot be predicated on the overruling of a motion for judgment notwithstanding the findings of the court, where under the circumstances, the alleged findings amount to but a general one. p. 694.

5. APPEAL.—*Review.—Ruling on Motion to Modify Judgment.*—Where a motion to modify a judgment questions the validity of the judgment, and not its form, the same is properly overruled. p. 694.

6. APPEAL.—*Review.—Harmless Error.—Admission of Pleading as Evidence.*—Where plaintiff offered in evidence a special answer, pleaded by defendant in addition to the general denial and specifically admitting the facts averred in the complaint, the error, if any, in its admission is not available to plaintiff on appeal. p. 694.

7. JUDGMENTS.—*Foreign Judgments.—Admissibility in Evidence.*—A certified copy of the proceedings of a probate court of another state disposing of property within its jurisdiction, is admissible in evidence in this State. p. 694.

8. JUDGMENT.—*Foreign Judgments.—Conclusiveness.*—Under Art. 4, §1, of the Federal Constitution, providing that full faith and credit shall be given in each state to the public records and judicial proceedings of every other state, a judgment rendered by a court of one state, having jurisdiction of the parties and the subject-matter, is as conclusive in every other state as in the one in which it was rendered. p. 694.

9.  NEW TRIAL—*Grounds*—*Statutes*.—Causes assigned for a new
trial, but which are not included in the statute enumerating the
causes for which a new trial will be granted, are not available.
p. 695.

10.  JUDGMENTS.—*Foreign Judgments*.—*Collateral Attack*.—Where
the judgment of a probate court of another state terminating a
testamentary trust, was made pursuant to statutory provisions
of such state giving probate courts full power to hear and deter-
mine all matters relating to the manner in which a trustee has
executed his trust, and requiring trustees to render accounts to
the probate court, etc., such judgment cannot be collaterally
questioned in this State, unless want of jurisdiction appears on
the face of the pleadings.  p. 695.

11.  TRUSTS.—*Trustee and Cestui Que Trust*.—*Judgments*.—*Conclu-
siveness*.—A *cestui que trust* is privy to his trustee, and an order
made or judgment rendered affecting the *res* of the trust is bind-
ing on the *cestui* without notice, where the trustee is in court
and the court has jurisdiction of the subject-matter.  p. 696.

12.  EVIDENCE.—*Common Law of Other States*.—Where one claims
the benefit of the common law of another state, as modified by
legislation and judicial construction, he must plead and prove
the same, otherwise the law of this state will furnish the rule of
decision.  p. 697.

13.  TRUSTS.—*Power of Trustees*.—*Execution of Power*.—The right
of surviving trustees of a testamentary trust to terminate the
trust is not dependent on any order of court, where, under the
terms of the will, they have authority to exercise the discretionary
power therein conferred of terminating the same.  p. 697.

14.  TRUSTS.—*Trustees*.—*Power Coupled with Interest*.—*Survival
of Power*.—Where a will bequeathed certain property to trustees
to pay the income to a named beneficiary, and gave them discre-
tionary power to pay over the principal and terminate the trust,
if in their opinion, it would be to the best interest of the *cestui
que trust*, the power conferred was not a naked power, but was
a power coupled with an interest, since the trustees held the legal
title to the *res* of the trust, and on the death of one of the trus-
tees, such power survives and may be executed by those re-
maining.  p. 698.

15.  TRUSTS.—*Power of Trustees*.—*Survival of Power*.—*Intention
of Donor*.—The intention of the donor as to the survival of the
power conferred in creating a trust will be followed, when such
intention can be reasonably ascertained from the instrument, but
no construction will be indulged which would result in any
serious impairment of the donor's intention, or leave the trust
imperfectly executed.  p. 700.

16. TRUSTS.—*Power of Trustees.*—*Survival of Power.*—*Intention of Donor.*—The presumption that every power coupled with an interest was given *ex officio*, and meant to survive, will not be excluded on the ground that the power conferred is one of special trust and confidence in the trustees as individuals, so as to defeat, on the death of one of the trustees named in a testamentary trust, the survival of the power to terminate the trust when, in their judgment, such termination would be to the best interest of the *cestui que trust*, unless the clear and apt language of the instrument imports a contrary intention. p. 701.

From Vigo Circuit Court; *Joshua Jump*, Special Judge.

Action by Winifred Harper Cooley against Frank A. Kelley individually, and as executor of the last will of Thomas W. Harper, deceased. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*C. A. Royse*, for appellant.

*Frank A. Kelley* and *Foley, Royse & O'Mara*, for appellee.

ADAMS, J.—This action was brought by appellant against appellee individually, and as executor of the last will of Thomas W. Harper, to establish a trust in certain personal property held by appellee, and to follow and recover the trust fund. The question presented by the record being essentially one of law, it is necessary, for a proper understanding of the same, to set out the undisputed facts, as they appear in the amended complaint and the third paragraph of answer.

The complaint shows that appellant is a daughter and only child of Thomas W. Harper, and a grand-daughter of William H. Harper, who died testate at Lima, Ohio, on April —, 1901, leaving surviving him four children, viz: William H. Harper, Jr., Thomas W. Harper (father of appellant), Vinnie Annat and Mary Syfers. The will of William H. Harper was duly proved in the Probate Court of Allen County, Ohio, on April 24, 1901. By its terms the will provided for the payment of the testator's debts, and made certain specific bequests. The balance of his property was devised and bequeathed to his four children above named,

share and share alike, subject to the provision that all his real estate be appraised and sold, providing the manner in which it should be sold, and distributed according to the terms of item six of said will, which is as follows:

> "I direct that the share of each of my children in my personal property and the proceeds of my real estate be paid to them in money or kind as soon as possible under the provisions of this will, except that one half of the share of my son Thomas W. Harper in the property described in items four and five hereof remain in the hands of my executor and my son-in-laws, R. K. Syfers and William Annat, whom I hereby appoint trustees for that purpose, until the death of my son, Thomas W. Harper. Said trustees to invest said sum and pay to my said son Thomas, yearly the income therefor. But I direct that if at any time in the opinion of my said trustees it would be for the best interests of my said son Thomas to pay him the whole or a part of said sum, they are hereby empowered to do so. If at the death of my said son Thomas, any part of said trust remain in the hands of my said trustees, they shall pay the same to any child or children of said Thomas surviving him, or to their legal representatives; if my said son Thomas at his decease leave no surviving child or grand-child, such remaining sum shall be paid to my surviving children or their legal representatives, share and share alike."

William H. Harper, Jr., was named as executor of the will, and after qualifying and making final settlement was duly discharged.

The three trustees named in item six received as a trust, for the purpose set out in said item, the sum of $7,230.09, invested the same, and paid the income thereof from time to time to Thomas W. Harper. On January 15, 1908, Rufus K. Syfers, one of the trustees named, died, and thereafter William H. Harper, Jr., and William Annat, as surviving trustees, concluded that a termination of said trust would be for the best interests of said Thomas W. Harper. On February 8, 1908, the surviving trustees delivered to said Thomas W. Harper certain notes, mortgages and cash, ag-

gregating in value the sum of $7,230.09, and received from said Thomas a receipt therefor. On March 4, 1908, Thomas W. Harper, being then a resident òf the city of Terre Haute, Indiana, died, testate, and his will was duly proved in the Circuit Court of Vigo County, Indiana, and admitted to probate on March 10, 1908. By said will the testator devised and bequeathed all his property to Ella Harper, who was his second wife and childless. Thomas W. Harper failed to make any provision for his daughter, the appellant, but recited in his will that he made such disposition of his property, for the reason, among other reasons, that his daughter, Winifred Harper Cooley, might, in a certain contingency, receive a portion of the property left by the will of his father. The will of Thomas W. Harper was dated December 11, 1903, and long before the principal fund of the trust estate was delivered to him. By the will of said Thomas, appellee, Frank A. Kelley, was appointed executor of the same, qualified as such executor on March 10, and took possession of all the personal property and estate of said Thomas W. Harper.

A demurrer to the complaint was overruled, and appellee answered in three paragraphs. The first was in denial. The third paragraph included the averments of the second, and admitted the facts averred in the complaint, but alleged that after the death of Rufus K. Syfers, on January 15, 1908, the two surviving trustees continued to administer said trust, and on February 3, 1908, filed in the Probate Court of Allen County, Ohio, their report and petition, averring that, in their opinion, a termination of the trust created by the will of William H. Harper would be for the best interests of Thomas W. Harper, asking for an order to turn over to said Thomas the balance of the trust funds in their hands, and that on producing the receipt of said Thomas for the same they be discharged as such trustees, and said trust ended; that on the filing of said final report the probate court entered an order authorizing said trustees to turn over

said trust estate to said Thomas W. Harper, and they did so in obedience to said order; that the court approved their final report, which showed that they had turned over said trust property, and released and discharged said trustees.

It is also averred in the third paragraph of answer that at the time the will of William H. Harper was executed, Thomas W. Harper was unmarried, and a man of intemperate habits, which was known to William H. Harper, and his purpose and intention was to preserve to his said son the benefit of a part of the property bequeathed to him; that prior to the time said trustees turned over the property to Thomas W. Harper, he had married, and was living in a quiet and respectable manner, and was able and competent to take charge of his own property at the time the same was turned over to him by the trustees; that on the death of Thomas W. Harper, the appellee, as executor of his will, took possession of the notes and securities in question as a part of the personal estate of said Thomas W. Harper. This paragraph of answer also sets out certain statutes and laws of the State of Ohio in force at and since the date of the probate of the will of William H. Harper.

A demurrer was sustained to the second paragraph of answer and overruled to the third. The cause was put at issue by a reply in denial to the third paragraph of answer, and submitted to the court for trial, which resulted in a finding for appellee.

Upon the hearing, appellant offered in evidence the third paragraph of appellee's answer, and by the testimony of appellee showed the amount of money, and the nature and amount of the securities held by him as executor. Appellee offered in evidence a transcript of the proceedings of the Probate Court of Allen County, Ohio, with reference to the trust in question, including the final report of the surviving trustees, the approval thereof by the court, and the discharge of the trustees. Appellee also offered in evidence the will of Thomas W. Harper, his marriage certificate, and certain

sections of the Ohio statutes, relating to probate matters and the jurisdiction of the probate court. No other evidence was heard.

The finding of the court was in the form of a written opinion, which has been carried into the record on appeal. It is unnecessary to set out this opinion, for reasons which will hereinafter appear.

The errors assigned and relied upon for reversal are as follows: (1) Overruling the demurrer to the third paragraph of answer; (2) overruling the motion for a new trial; (3) overruling the motion for a *venire de novo*; (4) overruling the motion for judgment, notwithstanding the finding of the court; (5) overruling the motion to modify the judgment. The last three specifications of error present the same matters, and are preliminary to the important questions involved in this appeal.

It is urged by appellant that the complaint having been held good, and the written opinion of the court being based on the theory that the complaint was not good, this

1. constitutes error. There is no merit in this contention. The ruling on demurrer is not binding on the court, and does not require subsequent rulings to be in harmony. *Newman* v. *Perrill* (1880), 73 Ind. 153, 156; *Stewart* v. *Terre Haute, etc., R. Co.* (1885), 103 Ind. 44, 47, 2 N. E. 208.

The record does not show any request for a special finding in this case, and under well-established rules the opinion of the court delivered in announcing its decision, al-

2. though carried into the record on appeal, cannot be regarded as anything more than a general finding. *Hinshaw* v. *Security Trust Co.* (1911), 48 Ind. App. 351, 93 N. E. 567, 569; *Bass* v. *Citizens Trust Co.* (1904), 32 Ind. App. 583, 584, 70 N. E. 400; *Northcutt* v. *Buckles* (1878), 60 Ind. 577, 579. The finding being a general one for

3. appellee, who was defendant below, it follows that there was no error in overruling the motion for a *venire de novo*. This motion reaches only matters of form,

and can only be sustained when the finding is so defective and uncertain that no judgment can be rendered thereon. *Zink* v. *Dick* (1891), 1 Ind. App. 269, 274, 27 N. E. 622; *Case* v. *Ellis* (1894), 9 Ind. App. 274, 275, 36 N. E. 666.

The motion for judgment notwithstanding the finding was based on the written opinion of the court, and as we have seen this opinion must be disregarded and the finding treated as a general one, there was no error in overruling the motion. The motion to modify the judgment was on the same ground, and as the motion questioned the validity of the judgment, and not its form, the same was properly overruled. *Stone* v. *Stone* (1902), 158 Ind. 628, 630, 64 N. E. 86.

The overruling of the demurrer to the third paragraph of answer and the motion for a new trial, separately assigned as error, present substantially the same questions for review. Appellant sought to establish her right to recover by offering in evidence the third paragraph of answer, which specifically admitted the facts averred in the complaint, with certain matters of defense added. Whether the facts admitted in the third paragraph of answer can be considered as proof supporting the complaint, when the general denial was pleaded, is not before us. The proof was offered by appellant and received by the court. If erroneous, the error is not availale to appellant, and as the finding was for appellee, he was not harmed.

All matters of defense were admitted in evidence without objection, except the certified copy of the proceedings of the Probate Court of Allen County, Ohio, relating to this trust. There was no error in receiving this proof. It is provided by Art. 4, §1, of the Federal Constitution that "full faith and credit shall be given in each state to the public records and judicial proceedings of every other state." This section requires that where a court of one state, having jurisdiction of the parties and the subject-matter, renders judgment, such judg-

ment is as conclusive in the other states of the Union as in the state where the same was rendered. *Old Wayne, etc., Assn.* v. *McDonough* (1905), 164 Ind. 321, 330, 73 N. E. 703; *American Mut. Life Ins. Co.* v. *Mason* (1902), 159 Ind. 15, 16, 64 N. E. 525.

Causes for a new trial numbered four, five, six, seven, eight and nine relate directly or indirectly to the alleged error of the court in reconsidering the sufficiency of the amended complaint. The statute enumerates the causes for which a new trial will be granted, and none of the causes as numbered above is included in the statute, and cannot be considered on appeal. *Over* v. *Dehne* (1906), 38 Ind. App. 427, 431, 75 N. E. 664, 76 N. E. 883.

Two questions arising on the motion for a new trial remain for consideration: (1) Had the Probate Court of Allen County, Ohio, jurisdiction to make the order directing the surviving trustees to turn over the trust fund? (2) Did the surviving trustees have the right to execute the power contained in item six of the will of William H. Harper, Sr.?

As we have seen, appellee set out various statutes of the State of Ohio, and made proof thereof on the trial. From this proof it appears by §6330 Bates' Ann. Stat. (Ohio), that the probate court "shall have full power to hear and determine all matters relative to the manner in which the trustee has executed his said trust, and as to the correctness of his accounts rendered as aforesaid." By §5985 Bates' Ann. Stat. (Ohio), it is provided that when two or more trustees are appointed by will to execute a trust, and one or more of them die, decline, resign or remove, the survivors or remaining trustee or trustees may execute the trust, unless the terms of the will express a contrary intention. By §6187 Bates' Ann. Stat. (Ohio), it appears that when an account is settled in the absence of any person adversely interested, and without actual notice to him, the account may be opened on his final exceptions to the same at any time within eight months thereafter. By §6328 Bates'

Ann. Stat. (Ohio), it is provided that any trustee appointed by any last will to execute a trust, created by such will, shall as often as once every two years render an account of the execution of said trust to the probate court of the county in which he was appointed, in the manner provided by law for the settlement of accounts of executors and administrators. It is not contended by appellant that the Probate Court of Allen County, Ohio, had no jurisdiction to determine all matters relating to the execution of the trust, but she insists that such probate court had no jurisdiction to approve the settlement made or to discharge the trustees. It is shown by the record that the surviving trustees filed their final report, and asked for an order to turn over to Thomas W. Harper the trust funds in their hands, and that they be discharged on producing his receipt for the same. Notice was given by publication, as required by law, and at the time set for the hearing of the report and petition the court made the following entry and order: "And the court, upon the examination of said account, and the final receipt of said testamentary ward, finds said account to be in all respects correct, and the same is therefore approved and confirmed and ordered recorded. And as provided by said will of William H. Harper, said trustees elect to terminate said trust, the said account is approved as final, and said trustees relieved and discharged from said trust." The power to hear and determine probate matters, as provided by the Ohio statute, constitutes jurisdiction, and unless want of jurisdiction appears on the face of the proceedings, a judgment cannot be collaterally questioned. *Baltimore, etc., R. Co.* v. *Freeze* (1907), 169 Ind. 370, 375, 82 N. E. 761.

As to notice, the general rule is that a *cestui que trust* is privy to his trustee, and an order made or judgment rendered affecting the *res* of the trust is binding on the 11. *cestui* where the trustee is in court, and where the court has jurisdiction of the subject-matter. *Robertson* v. *Van Cleave* (1891), 129 Ind. 217, 220, 26 N. E. 899, 29

N. E. 781, 15 L. R. A. 68; *Hoard* v. *Bradbury* (1901), 156 Ind. 30, 33, 59 N. E. 31.

There was no proof of the laws of Ohio offered other than that introduced by appellee. It has been held that where a party in this jurisdiction claims the benefit of the common law of another state, as modified by legislation and judicial construction, he must plead and prove the same as any other facts not judicially known by the courts of this State. In the absence of such proof, our own laws will furnish the rule of decision. *Buchanan* v. *Hubbard* (1889), 119 Ind. 187, 190, 21 N. E. 538; *Bierhaus* v. *Western Union Tel. Co.* (1893), 8 Ind. App. 246, 263, 34 N. E. 581.

If the surviving trustees were authorized to exercise the discretionary power conferred by item six of the will of William H. Harper, we do not think it important to determine whether the Probate Court of Allen County, Ohio, had jurisdiction to settle and close the trust or not. If the surviving trustees had such right, granted by the terms of the will, an order of the probate court could not enlarge the right. The exercise of the power was made dependent on the opinion of the trustees that a termination of the trust would be for the best interests of Thomas W. Harper. No order of court was required or contemplated. Indeed, such an order would imply a substitution of the opinion of the court for the opinion of the trustees, to whom was committed the duty of determining this question. And it will be noted that the court did not make any finding in the matter, but only approved the account, reciting that as the trustees had, pursuant to the will, elected to terminate the trust, the account was approved as final and the trustees discharged.

The important question is whether the discretionary power given to the trustees named in item six of the will of William H. Harper, on the death of one of the trustees, passed to the survivors. This question considered alone is not free from doubt under the authorities. By the Ohio

statute offered in evidence, it is clear that a trust created by will may be executed by surviving trustees, unless a contrary intention is expressed in the testament. But we are not now dealing with the execution of the trust. We are concerned with the exercise of the power. The record in this case does not disclose any law of Ohio authorizing a discretionary power incident to a trust to be exercised by surviving trustees, and we must look elsewhere for authority

It is obvious that the trustees in this case held the legal title to the *res* of the trust (2 Perry, Trusts §475) ; and therefore the power conferred on them was not a naked power, but one properly denominated "a power coupled with an interest." *Rowe* v. *Beckett* (1868), 30 Ind. 154, 159, 95 Am. Dec. 676. This expression was early defined by Chief Justice Marshall, in *Hunt* v. *Rousmanier* (1823), 8 Wheat. *174, *203, 5 L. Ed. 589, as follows: "The power must be engrafted on an estate in the thing. The words themselves would seem to import this meaning. 'A power coupled with an interest' is a power which accompanies, or is connected with, an interest. The power and the interest are united in the same person."

The United States Supreme Court, in the case of *Lorings* v. *Marsh* (1867), 6 Wall. 337, 354, 18 L. Ed. 802, said: "Inasmuch as the trustees are invested with the legal estate in order to enable them to discharge the various trusts declared, it is well settled that the power conferred is a power coupled with an interest, which survives, on the death of one of them, and may be executed by the survivor. * * * It is not necessary that the trustees should have a personal interest in the trust; it is in the possession of the legal estate, or a right *virtute officii* in the subject over which the power is to be exercised, that makes an interest, which, when coupled with the power, the latter survives."

The same court in the case of *Peter* v. *Beverly* (1836), 10 Pet. *532, *564, 9 L. Ed. 522, said: "The general principle of the common law, as laid down by Lord Coke [Co. Litt.

112b], and sanctioned by many judicial decisions, is that when the power given to several persons is a mere naked power to sell, not coupled with an interest, it must be executed by all, and does not survive; but when the power is coupled with an interest, it may be executed by the survivor.'' See, also, *In re Wilkin* (1905), 183 N. Y. 104, 75 N. E. 1105; *Sells* v. *Delgado* (1904), 186 Mass. 25, 28, 70 N. E. 1036; *Stanwood* v. *Stanwood* (1901), 179 Mass. 223, 60 N. E. 584; 22 Am. and Eng. Ency. Law 1101; 2 Perry, Trusts §505; Lewin, Trusts (9th ed.) 689; *Hadley* v. *Hadley* (1897), 147 Ind. 423, 46 N. E. 823.

The last case cited has been pressed on our attention by both appellant and appellee in support of their several contentions. In that case, at page 428, the court said: ''If the authority be committed to trustees, the presumption is that, as the power was coupled with an interest, it was meant to survive. If a power be a joint one coupled with an interest, it will survive if one of the donees of the power die. But where it is a mere naked authority it will not survive. So if the authority be to two or more in an official capacity *ratione officii* it will survive if one die. But if it be to them *nominatim* or they are clothed with a special confidence of a personal nature, it will not survive. 2 Wash. Real Prop. (5th ed.) 553. For if the act to be done requires an exercise of the judgment and discretion of the several persons named as trustees, it can only be exercised by them all. 2 Wash. Real Prop. 554.''

It will be noted that the rule last above declared relates only to cases where the donee has but a simple, naked power, and has reference to the facts in that particular case. These facts are that one Hadley, devised to his wife certain real estate for life, and at her death three persons, named in the will, were authorized to take charge as trustees, and devote the same, if thought practicable, to the erection and maintenance of a charitable institution. But it was provided that if the erection of such institution was not, in the judgment

of the trustees, deemed practicable, the lands were to be sold and the proceeds divided among his heirs. After the execution of the will, and before the death of Hadley, one of the trustees died, which fact was known to the testator. The court held the power conferred to be a simple naked power, and one that did not survive. This holding is clearly right, for the reason that no interest whatever passed by the will to the trustees. The first duty of the trustees, under the will, was to pass on the practicability of the erection of the institution, which, if determined in the negative, ended their connection with the estate.

In the case before us, the *res* of the trust was personal property. All of the trustees named survived the testator, and held the legal title to the trust fund. The exercise of the discretionary power provided for was an incident to and connected with the trust.

The cases are collected and the principles are stated in 2 Washburn, Real Property (5th ed.) 554, from which the learned author draws the following conclusions: "The rule to be gathered from what is above said may be again stated, that where there are several joint-trustees, and one of them dies, the survivors take and are authorized to act by virtue of their survivorship, in the same way as one of two joint-tenants of a legal estate takes by survivorship, unless it is a power only, and one not coupled with an interest; because, as an almost invariable rule, two or more trustees hold as joint-tenants, and not as tenants in common. If it is such a power, it ceases with the death of either of the trustees. A power is considered as coupled with an interest where the trustees have a right to the possession of the legal estate, or have a right in the subject over which the power is to be executed."

It would unduly extend this opinion to make further quotations from the settled law relating to trusts and 15. powers. All the authorities agree, however, that the intention of the donor as to the survival of the power

will be followed, whenever from the instrument creating the power the purpose can be reasonably ascertained. No construction is to be indulged which would result in any serious impairment of the donor's intention, or leave the trust imperfectly executed.

It will appear from even a casual reading of the will of William H. Harper that his primary intention was to treat his unfortunate son the same as his other children, and put him in possession of his full inheritance as soon as his conduct and manner of life seemed to warrant it. As to the time when this should be done, if at all, his trustees were to determine; but the welfare of Thomas was the object of the father's solicitude, and knowing, as he did, the uncertainties of life, we cannot believe that he contemplated or intended that his benevolent purpose should be defeated by the death of one of his trustees.

From the manifest intention of the testator, as well as from the weight of authority, we think the surviving trustees were fully warranted in exercising the power, and terminating the trust.

Judgment affirmed.

## On Petition for Rehearing.

Adams, P. J.—In her petition for rehearing, appellant, while not disputing the general rule that a power coupled with an interest will survive, insists that the power given by section six of the will of William H. Harper to his trustees was one of special trust and confidence in them as individuals, and not a power committed to them by virtue of their office.

The case of *Dillard* v. *Dillard* (1899), 97 Va. 434, 34 S. E. 60, is pressed on our attention, and is in point, assuming that the above construction of the will is true. In that case it is held that a power conferred on three trustees, without words of survivorship, and involving personal confidence, was one that could only be exercised

conjointly, and that on the death of one of the trustees the authority would be determined.

In support of this proposition, the case of *Cole* v. *Wade* (1807), 16 Ves., Jr., *27, with others, is cited, and is in point. In that case, the Master of Rolls said: "I conceive, that, wherever a power is of a kind that indicates a personal confidence, it must *prima facie*, be understood to be confined to the individual, to whom it is given; and will not except by express words pass to others, to whom by legal transmission the same character may happen to belong." This case was determined by the High Court of Chancery in 1807, and almost a century later, the same court (*In re Smith* [1903], 73 L. J. 74) overruled *Cole* v. *Wade, supra,* and held that the general principle would be applicable if it had been followed and adopted by the later cases. The court further said: "The principle, however, is open to the criticism that it is expressed in loose and general terms. All, or nearly all, powers necessitate, the personal confidence of the testator in the donees thereof, and it is very difficult to draw the line—for example, powers of leasing, and selling and investing, powers of maintenance and advancement of children, all require the exercise of discretion, but the principle could hardly be applied to them. I find it impossible to formulate any rule by which the court can say that certain powers are, and others are not, of such a nature that they must necessarily be given only to individuals known to the testator. There is no standard of measurement, but the more or the less becomes a mere matter of conjecture, affording no basis for judicial determination." The court reviews a number of cases and concludes: "Every power given to trustees, which enables them to deal with or affect the trust property is *prima facie* given to them *ex officio* as an incident of their office, and passes with the office to the holders or holder thereof for the time being. Whether a power is so given *ex officio* or not depends in each case on the construction of the document giving it; but the mere fact that the power is one requiring the exercise of a very

wide personal discretion is not enough to exclude the *prima facie* presumption, and little regard is now paid to such minute differences as those between 'my trustees,' 'my trustees, A and B,' and 'A and B my trustees.' The testator's reliance on the individuals to the exclusion of the holders of the office for the time being must be expressed in clear and apt language.''

*Hadley* v. *Hadley* (1897), 147 Ind. 423, 46 N. E. 823, the only Indiana case wherein the question of powers has been considered, followed the rule laid down by Washburn, that where the power is coupled with an interest the presumption is that it was meant to survive. It also appears from the latest expression of the High Court of Chancery that the rule of presumption in cases of this kind has now been changed in England, and that where a power is given to trustees, it is *prima facie* by virtue of their office. To overcome such presumption requires the use of clear and apt language in the instrument creating the trust and conferring the power. No such language is used in the will of William H. Harper. As the donees of the power hold the same *ex officio*, and no words are used importing a contrary intention, the power was one that would survive, and could be lawfully exercised in this case by the two surviving trustees.

Rehearing denied.

NOTE.—Reported in 96 N. E. 638, 98 N. E. 653. See, also, under (1) 31 Cyc. 350; (2) 3 Cyc. 181; 38 Cyc. 1976; (3, 4) 38 Cyc. 1990; (5) 23 Cyc. 866, 868; (6) 3 Cyc. 244; (7) 23 Cyc. 1545; (8) 23 Cyc. 1546; (9) 29 Cyc. 759; (10) 23 Cyc. 1546; (11) 23 Cyc. 1246; (12) 16 Cyc. 1084; (13) 40 Cyc. 1809; (14, 15, 16) 40 Cyc. 1834. As to the effect of judgments of sister-state courts, see 2 Am. Dec. 42; 103 Am. St. 304. As to what are collateral attacks upon judgments, see 23 Am. St. 104. As to the effect to be given a power coupled with an interest, see 110 Am. St. 860.