ROSENBERG v. ROSENBERG

[No. 19,357. Filed January 30, 1961.]

438

*Samuel M. Terner,* of Gary, *Floyd S. Draper,* of Sarasota, Florida, and *F. L. Wiltrout,* of Elkhart, for appellant.

*John Kappos, Albert H. Gavit,* both of Gary, and *Edwin L. Robinson,* of Morocco, for appellee.

KELLEY, J.—Action by appellant against appellee for divorce on ground of cruel and inhuman treatment. Appellee answered the complaint under the rules and filed what is designated as "Amended Cross-Complaint," which was answered by appellant under the rules. The Complaint prayed for equitable relief without any express prayer for alimony. The "Cross-complaint," in addition to specific allegations of cruel treatment of appellee by appellant, alleged, in substance, that appel-

lee had turned over to appellant his earnings from his employment by the Gary Bedding Company, except $2.00 per week, for safe keeping with the understanding between them that appellant was to save one-half thereof for appellee and use one-half for the support of the parties and their living expenses; that he also gave his earnings while self-employed to appellant upon the same understanding; that appellant purchased a lot for $400.00 out of the money given her by appellee and then sold the same for $2100.00, without any accounting to appellee; that appellant was worth a specified substantial amount of money; that through appellant's fraudulent and false "misrepresentation" he was induced to part with his said earnings, relying upon her said representation that she was wealthy and would not need his money and would save it for him, subject to his demand; that he made repeated demands for accounting which she failed and refused to give. Prayer for divorce and a settlement of the property right of the parties and order against appellant for return to him of the money, etc.

Trial resulted in a decree granting appellant a divorce and that appellee recover of appellant the sum of $3778.91.

Motions by appellant to modify the judgment and for a new trial were overruled and this appeal followed.

The only material question presented for our determination is whether the court abused its discretion in awarding appellee a money recovery against appellant. The affirmative of that proposal is, of course, upon the appellant.

Since the evidence was amply sufficient to sustain the court's award of a divorce to appellant, it becomes unnecessary to belabor the books with a delineation there-

of. A reference to the evidence giving rise to appellant's contention herein seems all that is required.

There is evidence tending to show that both the parties herein are of the Jewish faith; that eight or nine months, possibly a year, prior to their marriage on December 31, 1950, appellee came to this country as a refugee from Czechoslovakia with inability to speak English but with ability to speak "Jewish"; appellant had resided in Gary, Indiana, for some thirty-seven years and at the time of the trial was fifty-nine years of age and appellee was then sixty-three; appellant was the mother of five children by a previous marriage and appellee was the father of children by a previous marriage; the parties lived together as husband and wife until about May 12, 1957, at which time appellee finally left appellant.

Appellant and her son, Leonard, as partners, operated a bedding company in Gary and some two and one-half weeks after said marriage, appellee went to work for said bedding company and remained so employed until some time in April, 1954. At the time of the marriage appellee was unemployed and practically penniless. In the latter part of January, 1951, appellee received his first pay check. He took the check home and appellant and appellee mutually expressed elation, mingled with caresses and osculations.

The evidence, quoted in appellant's brief, of the ensuing conversation between the parties is somewhat difficult to understand and decipher due to the broken English, misapplied gender, incoherence, and stultiloquy employed therein. However, appellant states that for the purpose of this appeal, said evidence, though denied by her, must be taken as showing an agreement by appellant after marriage "to take one-half of appellee's pay checks for household and living expenses, and to

save one-half for him (appellee)." (Bracketed word is ours for clarity.)

During the time appellee was in the employ of the bedding concern operated by appellant and her son, appellee turned over his pay checks to appellant in the total sum of $7557.83. (Note: computation discloses that the court's recovery award to appellee amounts to one-half of the aforesaid total sum). During his self-employment as operator of the Factory Salvage Company, appellee wrote checks to appellant in the amount of $3210.00 and he gave her $1500.00 in cash. There is evidence that the parties purchased a lot for $400.00 and later sold the same for $2100.00, appellee receiving no part thereof.

At the time of the marriage appellant owned a three-flat building, 37 to 45 years old, the fair market value of which is not disclosed by the evidence; she had approximately one thousand dollars in the bank; she owned a lot which was sold in 1952 for $1800.00; she owned the building in which she and her son, Leonard, carried on the bedding company.

At the time of the divorce, appellant said she had $7000.00 to $7500.00 in the "First Federal"; in 1957 her share of the income from the partnership of herself and her son was "over $25,000.00"; she received $500 a month rent from the building occupied by the partnership and a salary of "a little over $200 a month."

Appellee lived in appellant's home without payment of rent or any of the taxes but appellee said he attended to the furnace, cleared the snow, and took care of the building. Appellant says that appellee "had a home to live in, his food, whiskey, clothes and Blue Cross insurance." Appellee testified that "For that $24 a week I have a home to live in, my food, whiskey, and clothes. I paid my laundry. As for insurance, I get paid for

Blue Cross, after I go away. She get paid Blue Cross. She paid Blue Cross. . . . I gave her checks more than $25.00, how much I could. . . ." This is quoted from appellant's brief to disclose the difficulty the court must have encountered in attempting to resolve the many differences and financial situations of the parties. Other evidence on other subjects was equally confusing and we will not further advert to it. We will add, however, that appellant testified that *"My husband didn't* make enough money to support me *the way I was accustomed to living."* (Our emphasis.)

No request for special findings of fact was made by either party but the court made a more or less particularized finding. Such finding, however, must be considered by us as a general finding, *Indiana Trial and Appellate Practice,* Flanagan, Wiltrout and Hamilton, Vol. 1, §1731, p. 349, although we may look thereto to determine "what matters were actually adjudicated," *Gavin* v. *Miller* (1944), 222 Ind. 459, 464, 54 N. E. 2d 277, as well as to the whole record. *Gavin* v. *Miller, supra; Cooley* v. *Kelley* (1911), 52 Ind. App. 687, 693, 96 N. E. 638, 98 N. E. 653; *Merchants Ntl. Bk. & Tr. Co.* v. *Winston et al.* (1959), 129 Ind. App. 588, 159 N. E. 2d 296.

The parts of said finding which are of interest in this appeal are as follows:

"The court further finds that under ordinary circumstances the defendant Eugene Rosenberg would not be entitled to recover on his cross-complaint inasmuch as dealings between husband and wife can not be treated as ordinaary contracts, nor are they governed by the general rule applicable to persons who are distinct and separate individuals, the husband and wife being one person in legal contemplation under the law of the State of Indiana. That there was, however, an employer-employee relationship between the parties which in the

court's opinion makes the disputed dealings between the parties unusual to the extent that they are not governed by the ordinary laws relating to marriage and divorce. This being an equitable cause of action, all difference between the parties should be resolved in one action if it is proper and legally feasible to do so.

"The Court is of the opinion that while the plaintiff is entitled to recover on her complaint and to the restoration of her former name, Helen Alterwitz, defendant and cross-complainant is entitled to his wages less the amount he agreed to contribute to the support of the parties."

Thereupon, the court entered judgment decreeing a divorce to appellant, with costs and attorneys' fees, and that appellee "do, have and recover of the plaintiff and cross-defendant, . . . Three thousand seven hundred seventy-eight and ninety-one hundredths Dollars ($3,778.91)."

Appellant vigorously contends that the court, in so adjudicating for appellee, abused its discretion and that its conclusion is clearly against the logic and effect of the facts and circumstances before the court. She asserts that there was no evidence showing that she was indebted to appellee for any wages springing from an employer-employee relationship. We are inclined to agree to said last assertion. We find nothing in the record upon which the court could predicate a recovery by appellee of wages from appellant. And if the determination of this appeal rests exclusively upon that particular base, a reversal must surely result.

But the matter does not allow of such an easy disposition. It must be conceded, of course, that were this simply an ordinary or usual civil action between the parties, unaffected by any considerations of the special principles applicable to actions for the dissolution of the marriage relationship, the evidence adduced below

would not authorize a recovery by appellee against appellant for wages.

In a divorce proceeding, the court is not only authorized but it becomes its duty to determine upon and, insofar as the evidence warrants, balance the equities between the parties. It may be true, as appellant urges, that, in strict law, appellee could not recover of appellant solely upon the alleged contract with her. In our opinion, we are not here required to pass upon that question as was the court in the case of *Harrell* v. *Harrell* (1888), 117 Ind. 94, 19 N. E. 621. In that case the husband brought a direct action against his wife for the recovery of money he alleged she obtained from him for use in her separate business and which she expressly promised to repay. No dissolution of their marital relations was counted upon. The court held therein that there could be no recovery against the wife solely upon the contract made with her but that the express contract constituted an essential element of an equitable claim which the court will enforce. The court said: "It is, however, the equitable claim, and not the naked contract, which evokes assistance from the courts."

In the case before us, the court was not required to adjudicate upon the "naked contract" between these parties. It could, and apparently did, consider the evidence relating to the alleged contract, together with all the other evidence concerning the relationship, contributions, activities, property and income of each of the parties, and endeavor therefrom to arrive at a fair, just and equitable settlement of their property rights. And so long as the finding was within the sphere authorized by the evidence, and predicated thereon, its conclusion, though perhaps not satisfactory to one or both of the parties, could not, for that

reason, be declared to be an abuse of its judicial discretion. It matters not, in the absence of a request for special findings, what reason may have been advanced by the court for arriving at its result if such result is reasonable and just and is contained within the accepted legal principles applicable to the circumstances and conditions reflected by the evidence. *Dowd* v. *Sims* (1950), 229 Ind. 54, 58, 95 N. E. 2d 628; *State ex rel. Young* v. *Niblack* (1951), 229 Ind. 509, 514, 515, 99 N. E. 2d 252; *Central Indiana Railway Company* v. *Wishard* (1917), 186 Ind. 262, 274, 114 N. E. 970; *Wood* v. *Wood* (1954), 125 Ind. App. 128, 130, 123 N. E. 2d 201; *Blanchard* v. *Wilbur* (1899), 153 Ind. 387, 393, 55 N. E. 99; *Harris* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Company* (1899), 153 Ind. 475, 478, 55 N. E. 222, I. L. E., *Appeals*, Vol. 2, §472.

The heart of appellant's position seems to be that there was evidence that the money turned over to her by appellee was "not sufficient to pay living expenses"; that the money received by her was not "for the benefit of her separate estate, or to prevent loss or injury" to appellant; that appellee could not "relieve himself by oral contract from the legal obligation of supporting" appellant; that appellee acquired no "equitable rights" through the contract, particularly when he failed to comply with his marital duty not to treat appellant with cruelty. Upon such stated considerations, she says that "it was an abuse of discretion to award appellee a judgment for one-half of the amount of the pay checks."

Our attention has been directed to no evidence showing the particular, general or average amount required for the living expenses of the parties. As we referred to above, the appellant said (in substance from appellant's brief) : "as to taking this money and paying the living expenses, there wasn't enough of the living ex-

penses, but I have to pay other expenses from. It wasn't enough to pay living expenses. My husband didn't make enough money to support me the way I was accustomed to living." It is nigh to impossible to put together the statements of appellee concerning the matter but he did say (apparently referring to the time the first check was received) that she said "you are refugee, you crazy. I don't need for you a penny. I got plenty of money. I need nothing," and in September of 1957 she called appellee "to sign tax" and she came to the store and "tell me." "I am talking about, supposed to pay money," "In the Hell with the money. You need plenty money. I no need your money. You give church the money." There was other unconnected evidence as to various matters such as clothes, insurance, Temple contributions, travelling fares, telephone charges, "for furs, for shoes, for bill for cleaning clothes, for hats," etc., but no amounts or itemizations were given. It is thus clear that the court was given little in the way of evidence upon which to determine whether or not one-half of the money entrusted to appellant by appellee was sufficient for their living expenses. It is also clear that what evidence there was tended to show how appellant viewed the relative financial situation of the parties and that she never intended or expected reimbursement from appellee of any contributions voluntarily made by her for the household and her maintenance.

While it may be true that appellee could not "relieve himself by oral contract from the legal obligation of supporting" appellant, there is no undisputed evidence that he failed to do so. Appellant said that there "wasn't enough to pay living expenses;" but that bald statement was unsupported by any itemization, explanation or cost figures. She also qualified the statement by saying appellee did not make enough money to support

her "the way I was accustomed to living." How or in what way she was accustomed to living is not disclosed by the evidence. It remains from our aforesaid reference to the evidence that we cannot say that the court abused its discretion in awarding a money recovery to appellee because of undisputed evidence that he failed to support appellant. All such referred to matters, as reflected by the evidence, were proper for the court's consideration in arriving at an equitable disposition of the property rights of the parties.

Appellee relies heavily upon the case of *Harrell* v. *Harrell, supra,* and some of the cases following it, particularly *Stanley* v. *Stanley* (1895), 14 Ind. App. 398, 42 N. E. 1031, and *Leimgruber, Administrator* v. *Leimgruber* (1908), 172 Ind. 370, 86 N. E. 73. We have already adverted to the Harrell case, with the observation that it was a direct action by the husband against his wife to recover money obtained from him. The Stanley case was a direct action by the wife against the husband in which he countered for work and labor upon an implied contract only. The Leimgruber case was a claim by the husband against the estate of his deceased wife. In none of said cases was the trial court exercising its equitable powers in a divorce action to adjust and settle all the property rights of the parties. In the matter now before us, we are not called upon to determine what the relative legal rights of the parties would be in a direct action by appellee against appellant upon the agreement or understanding mentioned herein. Appellee's "Cross-Complaint" did not proceed upon the theory of recovery against appellant on the contract. It alleged facts showing the "understanding" between the parties; that appellee's earnings were turned over to appellant; that appellant refused to account therefor; and other facts as to appellant's wealth and her cruel

treatment of him. The prayer was for a divorce and that the court "settle the property rights of the parties" and by its order to compel appellant to turn over to appellee a designated sum of money "representing his interest in the assets and property of the parties."

By its general finding the court properly ruled out any right of recovery by appellee on the agreement, as such. The court did not find for appellee on his "Cross-Complaint" but found he was entitled to "his wages" less his contribution to the support of the parties. We must indulge every presumption in favor of the correctness of the court's decree. In so doing, we are convinced that the court used the amount of "the wages" received by appellee and turned over to appellant as an aid or yardstick, in relative consideration with all the evidence before it as to the earnings, income, property, financial condition and accumulations of the parties, to reach a fair and equitable adjustment of their property rights. Under the repeated holdings of our courts, such was the duty of the trial court. *McHie* v. *McHie* (1938), 106 Ind. App. 152, 177, 16 N. E. 2d 987; *Temme* v. *Temme* (1937), 103 Ind. App. 569, 573, 9 N. E. 2d 111; *Wallace* v. *Wallace* (1953), 123 Ind. App. 454, 110 N. E. 2d 514; *Seward* v. *Seward* (1956), 126 Ind. App. 607, 134 N. E. 2d 560.

Appellant pursues with the statement that "Here the court does not adjudicate property rights" and that "the trial court misconceived the evidence and based his decision upon that misconception." It appears from appellant's brief that she predicates this statement upon the wording of the general finding of the court to the effect that appellee was entitled to his wages less what he agreed to contribute to the support of the parties and upon the asserted fact that there was no employer-employee relationship be-

tween the parties. We cannot accede to the proposition that the court did not adjudicate the property rights of the parties. It seems clear to us that although there may have been non-essential recitals in the general finding, the legal effect of the court's decree could be considered none other than an equitable adjustment of the relative property interests and rights of the respective parties. Nor are we impressed that the court misconceived the evidence.

Here appellant, a woman of considerable means, knowingly marries a penniless refugee; he lives with her in her home and takes care of her apartment building; he works in her bedding company and, except for some $2.00 a week, turns over to her his pay checks amounting to $7557.83, his self-employed earnings of $3210.00, and $1500.00 in cash, a total of $12,267.83, upon an understanding with her that she is to use one-half for living expenses and save one-half for him. By virtue of her marriage and joint returns she effectuates a savings in her income tax; she uses $400.00 of appellee's money to purchase a lot which she sells for $2100, thus acquiring and appropriating a gross cash amount of $1700; at the time of the hearing, appellee has nothing, while she possesses some $7500 cash on deposit, had earnings of some $25,000 in 1957 from her bedding company in addition to approximately $500 a month rent and a salary of $200 per month. The court sets off to appellee no part of appellant's separate estate. All the circumstances disclosed by the evidence; the relative situations and transactions of the parties; their relative possessions and condition in life; the general progress and tenure of their married life; their attitudes and representations one to the other, were all matters placed before the court and from which it made its conclusions. Un-

der all these considerations and factors, we fail to perceive the basis of the contention that the court misconceived the evidence.

Appellant further asserts that "the rule in Indiana is well-established to be when a divorce is decreed to the wife because of the misconduct of the husband, the court is not justified in taking property from the wife, even though it had been previously settled upon her by the guilty husband." As a general statement of the law, said assertion meets with no opposition by appellee. The difficulty, as usual, arises from the endeavor to apply the stated legal principle to the factual situation found in the record. The principle has its roots in the protection the law strives to throw about the feme covert. Basically it guards her separate property, including any property settled upon her by her husband. In the present case, however, there appears no evidence of the settlement by appellee of any property upon appellant. Nor does it appear that any property belonging to appellant is being taken from her. The appellee entrusted his wages and earnings to appellant upon the above referred to understanding between them. The record discloses no evidence of any intention by appellee that such wages and earnings should become the property of appellant nor that appellant herself ever expected or intended, in accepting the arrangement, or at any later time, that the same should become her property or separate estate. Whatever arrangement and understanding the parties may have had between them was oral, not written, and, therefore, it was for the court to hear and determine from the evidence and the reasonable inferences properly deductible therefrom, what the parties intended and what their evinced purpose was in reaching their understanding. The appellee was awarded

only a part of the total wages, earnings and money he put in appellant's hands pursuant to their arrangement and nothing of the $2100.00 gross amount received by appellant from the sale of the lot purchased with $400.00 of appellee's money. While not parallel in the recited facts with those found in this action, the case of *Seward* v. *Seward, supra,* nevertheless is authority for the power of the court to adjust the property rights and interests of the parties in a divorce proceeding and to grant a money judgment to the erring husband against the guiltless wife. In that case, as in this, the wife was awarded the divorce and the husband was given a money judgment against her. The court said:

> "In adjusting the property rights of the parties, the court, under the circumstances, had the authority to enter a money judgment in appellee's favor or to set off and award to him a part of the physical assets. It chose to do the former and we find no error or abuse of discretion in such action by the court."

Appellant continues that "This court must know as a matter of judicial knowledge that the amounts he [appellee] so contributed to the support of himself and wife were not sufficient to maintain them, and the record so shows. . . . We come to the question whether it would be equitable, or for that matter legal, under any circumstances to compel a wife to return to a husband money which she had received from him during coverture and *already expended for their support.*" (Bracketed word is ours). It requires no citation of authority to support our belief that we are without judicial sanction to take judicial knowledge of the amount of money required for the maintenance of appellant and appellee. Further, whether or not appellant had "already expended [the money] for their

support" (bracketed words are ours) was a fact question for the court. The evidence was not undisputed and appellant does not so contend. Appellant said that the money wasn't enough to pay living expenses and that appellee did not make enough to support her "the way I was accustomed to living." No figures or itemization in support thereof was put in evidence. Therefore, it remained for the court to draw inferences from all the evidence as to whether or not the money was sufficient for living expenses of the parties and such inferences could have posed a conflict with appellant's general statement. Appellant's said conclusions were not necessarily binding on the court. Nor was the court compelled to believe the generality. In *Wright* v. *Peabody Coal Company* (1948), 225 Ind. 679, 77 N. E. 2d 116, it was said:

> ". . . the trier of the facts cannot arbitrarily reject items of oral evidence but, even though a particular item of evidence is not expressly or directly contradicted, this does not prevent the trier from taking into consideration all of the other evidence including circumstances and surroundings that might in any way affect the weight or credibility of such evidence, and the trier may disregard oral evidence if considered unreasonable or inconsistent with facts and circumstances shown by the other evidence in the case."

See, also, *Schmittler* v. *State of Indiana* (1950), 228 Ind. 450, 464, 465, 93 N. E. 2d 184 (disapproved on other grounds in *State* v. *Lindsey* (1952), 231 Ind. 126, 134, 106 N. E. 2d 230) ; I.L.E., *Coram Nobis,* §49, p. 414. Apparently, as indicated by its decree, the court was not inclined to appellant's view. We must accept the court's conclusion on this fact question.

We have endeavored to notice and consider each of the various points and contentions advanced by ap-

454

pellant and find none which establish error by the record or that the court, under the facts and circumstances made evident by the record herein, abused its discretion. Consequently, an affirmance must follow.

Judgment affirmed.

Pfaff, P. J., Bierly and Gonas, JJ., concur.

NOTE.—Reported in 171 N. E. 2d 829.