**Walter H. GILMER and Helen Gilmer, Appellants (Defendants below)**

v.

**BOARD OF COMMISSIONERS OF MARSHALL COUNTY, Indiana, Appellee (Plaintiff below).**

No. 3–1280A397.

Supreme Court of Indiana.

Oct. 4, 1982.

Marshall F. Kizer, Kizer, Neu, Joyce, Hite, Wyland, Wagner & Gifford, Plymouth, for appellants.

Eugene N. Chipman, Chipman, Humphrey & Chipman, Kenneth M. McDermott, McDermott Law Office, Plymouth, for appellee.

HUNTER, Justice, dissenting to denials of transfer.

I must respectfully dissent to this Court's refusal to grant the petitions to transfer filed in the above-entitled cause. Therein, both the defendants, Walter and Helen Gilmer, and the plaintiff, the Board of Commissioners of Marshall County, seek review of the Court of Appeals' opinion found at *Gilmer v. Board of Commissioners of Marshall County,* (1981) Ind.App., 428 N.E.2d 1318 (Hoffman, P. J., concurring in result).

The dispute between the Gilmers and the Marshall County Board of Commissioners involves the matter of adjacent landowners' responsibilities *vis-a-vis* each other's property with respect to surface water, an issue recently discussed by this Court in *Argyelan v. Haviland,* (1982) Ind., 435 N.E.2d 973 (Hunter, J., dissenting with opinion in which Givan, C. J., concurred). There, the majority of this Court adopted the "common enemy" doctrine as enunciated in an 1878 decision of this Court, *Taylor, Administrator v. Fickas,* (1878) 64 Ind. 167.

Prior to this Court's decision in *Argyelan v. Haviland,* however, the Third District Court of Appeals had handed down its decision in the instant case. *See Gilmer v. Board of Commissioners of Marshall County, supra.* The opinion was rendered as a companion decision to *Rounds v. Hoelscher,* (1981) Ind.App., 428 N.E.2d 1308 (Hoffman, P. J., concurring in result), where the Court of Appeals resolved that this jurisdiction should abandon the "antiquated" common enemy doctrine in favor of the rule of reasonable use. In deciding the instant case that same day, the Court of Appeals directed the trial court to conduct further proceedings consistent with the rule of reasonable use enunciated in *Rounds v. Hoelscher, supra.*

Both the Gilmers and the Marshall County Board of Commissioners now petition this Court to grant transfer and review the Court of Appeals' decision. Consistency in our case precedent and the application of our laws deem that the Gilmers' petition to transfer should be granted. A larger issue looms within the petition to transfer of the Marshall County Commissioners, however; the elementary and fundamental principle of due process, as well as Ind.R.Ap.P. 11(B)(2)(e) and well-settled case precedent, demand the Commissioners' petition be granted.

That is so because the Commissioners obtained injunctive relief at the trial court level on the basis that surface water repelled from Gilmers' land onto a county roadway constituted a "nuisance," as that cause of action is defined in Ind.Code § 34–1–52–1 (Burns 1973). Due to the Court of Appeals' disposition of the Gil-

mers' appeal and this Court's refusal today to review this cause, the Marshall County Board of Commissioners has been denied appellate review of the theory of law upon which it gained its trial court judgment.

That result is indeed unusual. Certainly it is anathema to the right to appeal granted our citizens, as well as to the notion of due course of law guaranteed by our Indiana Constitution. *See Indianapolis Life Ins. Co. v. Lundquist*, (1944) 222 Ind. 359, 53 N.E.2d 338; *Ind.Const.* art. 1, § 12. That a judgment entered at the trial court may be vacated without appellate review of the merits upon which it was granted is unacceptable, for there is no more important judicial function in this state than the duty of affording our citizens their day in court and their right to appellate review. That is the bedrock principle of our judicial system.

The inability of the Marshall County Commissioners to gain appellate review is particularly paradoxical in light of a well-settled and routinely-invoked rule of appellate review. Chief Justice Arterburn succinctly stated the rule in *Cain v. State*, (1973) 261 Ind. 41, 45–6, 300 N.E.2d 89, 92:

"Finally, we point out that in reviewing a judgment on appeal it is the duty of the Supreme Court to sustain the action of the trial court if it can be done on any legal ground on the record. This is true even though the reason given by the trial court might be erroneous, if the ruling can be sustained on another ground."

The rule that our appellate tribunals must affirm the judgment or ruling of the trial court if sustainable on any theory has been repeatedly invoked in this jurisdiction, in civil as well as in criminal appeals. *See, e.g., Elmore v. City of Sullivan*, (1978) Ind. App., 380 N.E.2d 108; *In re Estate of Fanning*, (1975) 263 Ind. 414, 333 N.E.2d 80; *Duemling v. Fort Wayne Community Concerts, Inc.*, (1963) 243 Ind. 521, 188 N.E.2d 274; *Kranda v. Houser-Norborg Medical Corp.*, (1981) Ind.App., 419 N.E.2d 1024; *Indiana Broadcasting Corp. v. Star Stations of Indiana*, (1979) Ind.App., 388 N.E.2d 568; *Theye v. Bates*, (1975) 166 Ind.App. 652, 337 N.E.2d 837; *Wilhoite v. Beck*, (1967) 141 Ind.App. 543, 230 N.E.2d 616; *Rosenberg v. Rosenberg*, (1961) 131 Ind.App. 437, 171 N.E.2d 829.

Wholly at odds with these precedents is the fate which befalls the Commissioners here. Their petition to transfer is expressly predicated on Ind.R.Ap.P. 11(B)(2)(e), which provides that one basis for seeking transfer is the failure of the Court of Appeals "to give a statement in writing of each substantial question arising on the record and argued by the parties." In their petition, the Commissioners have explained that they obtained their judgment on a nuisance theory; they have referred us to their brief filed with the Court of Appeals and established that the nuisance theory was argued by the parties. The Commissioners have complied with our appellate rules.

The rules and standards of appellate review do not lend themselves to *ad hoc* application. This Court errs today by virtue of the majority's refusal to grant the Marshall County Board of Commissioners' petition to transfer.

Granting transfer would have served another purpose. Review of the trial court's judgment would have provided this Court with the opportunity to reexamine our holding in *Argyelan v. Haviland, supra.* Against the facts of the present dispute and the letter and spirit of the nuisance statute, this Court could have assessed the merits of the 104 year old rule invoked in *Argyelan.* That assessment would be particularly appropriate since the majority of this Court in *Argyelan* refused to address the potential applicability of the nuisance statute, even though that theory ostensibly provided a basis for affirming the trial court and was consequently appropriate for consideration. *Cain v. State, supra.*

The nuisance statute is unambiguous: "Whatever is injurious to health, or indecent, or offensive to the senses, or an *obstruction* to the free *use of property,* so as essentially to interfere with the *comfortable enjoyment* of life or *property,* is a nuisance, and the subject of an action." Ind.Code § 34–1–52–1, *supra* (emphasis added).

The legislature stated that "whatever" constituted an "obstruction" to the "free use of property" and its "comfortable enjoyment" was actionable. It did not say "whatever, excepting surface water."

This jurisdiction has recognized that injury to the health or senses is not the sole gravamen of the statute. *Yeager & Sullivan, Inc. v. O'Neill,* (1975) 163 Ind.App. 466, 324 N.E.2d 846. In terms of fundamental principles of liability, there appears no rational distinction between interferences with the use of property occasioned by surface water, as opposed to other mediums such as pollution, sound, or vibration. *See, e.g., Muehlman v. Keilman,* (1971) 257 Ind. 100, 272 N.E.2d 591; *Friendship Farm Camps, Inc. v. Parson,* (1977) 172 Ind.App. 73, 359 N.E.2d 280. If property is rendered unusable or can no longer be comfortably enjoyed, that is a nuisance. Our legislature stated it that way. Other jurisdictions have recognized there is no rational basis by which to exclude surface water from the realm of nuisance law and principles. *See, e.g., Butler v. Bruno,* (1975) 115 R.I. 264, 273, 341 A.2d 735, 740, 93 A.L.R.3d 1183, 1190, n. 6 ("the invasion of one's property by surface waters can be a nuisance, no different from an invasion by noise, noxious vapors, or the like"); *Deason v. Southern R. Co.,* (1927) 142 S.C. 328, 140 S.E. 575 (common enemy doctrine modified to comport with law of nuisance). Indeed, this Court has recognized that the obstruction of a roadway, either by flooding or by a physical structure, constitutes a nuisance. *See Langsdale v. Bonton,* (1859) 12 Ind. 467; *State v. Phipps,* (1853) 4 Ind. 515.

The facts of this case reveal the Board of Commissioners of Marshall County is eyeball-to-eyeball with a "nuisance," both in its legal and lay sense. It is the Commissioners' legal duty as public officials, of course, to maintain Marshall County roadways in a safe and usable condition; any liability for the failure of the Commissioners to fulfill their public duty rests with Marshall County. *Board of Commissioners of Delaware County v. Briggs,* (1975) 167 Ind.App. 96, 337 N.E.2d 852; *Davis v. Board of Commissioners of Monroe County,* (1971) 149 Ind. App. 451, 273 N.E.2d 551; *Board of Commissioners of Miami County v. Klepinger,* (1971) 149 Ind.App. 377, 273 N.E.2d 109.

Here, the record reveals in undisputed fashion that following every rainfall, South Hickory Road, a Marshall County roadway, is submerged under six inches to two feet of standing water, depending upon the amount of precipitation. Tr. pp. 74, 91, 94. It is undisputed that the standing water often renders the road hazardous or unusable. Tr. pp. 74, 93, 96, 99. Sometimes it is necessary to close the road because of the flooding. Tr. p. 99.

The water has completely eroded the road surface and has so weakened its sub-base, according to expert testimony, that maintenance of the roadbed has been rendered impossible under existing conditions. Tr. p. 74–76. Numerous photographs reveal both the standing water and the deleterious toll it has taken on the surface and roadbed of South Hickory Road. Tr. pp. 71, 72, 73.

The record also reveals that residents of the area have repeatedly complained to the Commissioners about the condition of the road. Tr. pp. 74, 99. Farmers testified that the water requires them to make detours of two miles or more, depending upon the size of their farm machinery and local bridges, thereby increasing the cost of operating their businesses. Tr. pp. 90, 96–8. A resident whose home sits adjacent to South Hickory Road testified that prior to the time when the public thoroughfare was rendered *virtually* unusable by the repeated instances of flooding, "a tremendous number of people" used the road to go to work. That was no longer true, he testified. Tr. p. 97.

It is also undisputed that standing water was not a problem on South Hickory Road prior to 1964, when Walter Gilmer inherited farmland adjacent to the road. Tr. pp. 80, 93, 145. Shortly thereafter, he complained to the Commissioners of Marshall County about standing water which, via the natural contour of the land, was draining across South Hickory Road onto his farmland. He requested the Commissioners to build a

drainage ditch alongside the roadway. Gilmer testified that due to a lack of funds, the Commissioners were unable to act. Tr. p. 146.

Nor did Gilmer install a drainage ditch. Instead he built an earthen dam alongside the roadway to wall out the surface water; every year he repaired the annual cumulative washout. Tr. p. 146. Then, in 1979, he significantly expanded the earthen levee. Gilmer extended the length of the levee so that it paralleled the roadway for approximately two to three hundred yards; he increased its height to as much as three and one-half feet in places. Tr. p. 94. Thereafter, the flooding of South Hickory Road became a commonplace event, creating the problems heretofore described and precipitating the Commissioners' suit for damages and injunctive relief.

At the hearing, Gilmer testified that absent the earthen levee, twenty-two acres of his farmland would be unusable due to standing water. Tr. p. 150. A resident of the area, however, testified that only one acre would be lost if the dam were removed. Tr. p. 95. Marshall County Surveyor Frank Kleinke testified that Gilmer would lose about five to ten acres without the dam. Tr. p. 82.

Based on the foregoing evidence, the trial court found that the levee built by Gilmer had materially impeded "the natural flow of water" in the area, creating a nuisance. The court found and ordered the Gilmers to remove so much of the levee as "sufficient to allow surface water to flow off the road." The court concluded that the dam constituted a nuisance by virtue of the fact that it deprived the public of the use of South Hickory Road and endangered the "health, welfare, and safety" of the public.

The Gilmers then appealed, the history of which has heretofore been explained. Meanwhile, this Court, albeit not without dissent, was deciding in *Argyelan v. Haviland, supra,* that a landowner may alter his property in a manner which causes surface water to stand in "unusual quantities" upon adjacent property. *Argyelan v. Haviland, supra,* 435 N.E.2d at 977, quoting *Taylor,*

*Administrator v. Fickas, supra.* At the same time, the majority of this Court was expressly disapproving of the Court of Appeals' holding in *Rounds v. Hoelscher, supra,* which the trial court in the instant cause has been directed to follow. Where all of this leaves the Gilmers, the Marshall County Board of Commissioners, and the citizens of Marshall County, I do not know. The trial court has before it two conflicting rules, one of legislative authority and the other of judicial origin. This Court should have resolved that conflict here.

For all the foregoing reasons, I dissent. The petitions to transfer of the Gilmers and the Marshall County Board of Commissioners should have been granted, the decision of the Court of Appeals should have been vacated, and the substantive basis of the judgment entered in the trial court should have been addressed on its merits. Lacking a majority here, practitioners are reminded that pursuant to our procedural rules, this Court's denial of transfer is without authority as precedent. Ind.R.Ap.P. 11(B)(4).

I dissent.